**Daniel A. GEORGE, Appellant,**

v.

**LOCAL UNION NO. 639, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, AFL–CIO, et al., Appellees.**

No. 93–7111.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 20, 1996.

Decided Nov. 29, 1996.

---

Daniel A. George, appearing pro se, filed the briefs for appellant.

Kenneth J. Nunnenkamp argued the cause for amicus curiae in support of appellant with whom Liam O'Grady appointed by the court, Washington, DC, was on the briefs.

Jonathan G. Axelrod argued the cause and filed the brief, Washington, DC, for appellees.

Before: EDWARDS, Chief Judge, WALD and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

At the time this suit arose, appellant Daniel George was a member of Local 639 of the International Brotherhood of Teamsters ("Local 639" or "Local"). On April 4, 1989, George sued the Local, alleging that the Local violated the Labor–Management Reporting and Disclosure Act ("LMRDA") and the duty of fair representation through various actions. The District Court first noted that "substantial portions of George's complaint" were barred by the statute of limitations. Citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 155, 103 S.Ct. 2281, 2285–86, 76 L.Ed.2d 476 (1983), the District Court ruled that George's claims under LMRDA section 101(a)(1), 29 U.S.C. § 411(a)(1) (1994), were barred by the six-month statute of limitations of section 10(b) of the National Labor Relations Act

("NLRA"), *id.* § 160(b). The District Court also concluded that the six-month statute of limitations of section 10(b) applied to George's duty of fair representation claims. As to George's other claims, the District Court considered the claims on the merits and granted summary judgment in favor of the Local.

We hold that the District Court erred in applying the six-month statute of limitations of section 10(b) to George's section 101(a)(1) claims. In *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), the Supreme Court considered the statute of limitations for a claim under LMRDA section 101(a)(2). The Court distinguished *DelCostello* based on the fact that Title I of LMRDA, which includes sections 101(a)(1) and (a)(2), serves different policies than those embodied in section 10(b). Although *Reed*'s holding was limited to section 101(a)(2) claims, we find no way to distinguish section 101(a)(1) claims from the section 101(a)(2) claims considered in *Reed*. Indeed, as the *Reed* Court noted, sections 101(a)(1) and (a)(2) both "serve the core function of enhancing union democracy through enforcement of the rights of union members." *Id.* at 331 n. 6, 109 S.Ct. at 629 n. 6. While it is true that Title I actions might have some effect on the collective bargaining process, this effect is legally irrelevant with respect to the issue before us. We therefore hold that section 101(a)(1) claims are governed by the borrowed statute of limitations of state law, and not the six-month statute of limitations of section 10(b). Thus, we remand the section 101(a)(1) claims that the District Court held to be time barred.

As for George's duty of fair representation claims, we hold that the District Court was correct to apply the section 10(b) statute of limitations. This conclusion follows directly from *DelCostello*. The *DelCostello* Court selected the section 10(b) statute of limitations for "hybrid" claims [1] based on two rationales:

---

1. A "hybrid" claim is one in which the employee has a claim both against the employer (for breach of the collective bargaining agreement, under section 301 of the Labor Management Relations Act) and the union (for breach of the duty of fair representation). *See DelCostello*, 462

U.S. at 163–65, 103 S.Ct. at 2289–91. In such a hybrid claim, "[t]o prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the

the similarity of the rights asserted in unfair labor practice cases (to which section 10(b) applies) and in hybrid suits, and the similarity of the considerations relevant to the choice of a limitations period in the two contexts. Because these similarities are also present in a straight duty of fair representation case arising under the NLRA,[2] the District Court was correct to apply the section 10(b) statute of limitations to the duty of fair representation claims. As to George's other claims, we conclude, after a *de novo* review of the record, that summary judgment in favor of the Local was appropriate.

## I. BACKGROUND

At the time this suit arose, Daniel George was a truck driver in the "Sears unit" at Jacobs Transfer, Inc. ("Jacobs") and a member of Local 639.[3] On March 16, 1985, the collective bargaining agreement covering the Sears unit expired. Soon after, on April 11, 1985, Jacobs made a "final offer" to Local 639. The offer proposed to reduce employee wages and transfer employees from the Local 639 health and pension plans to the Jacobs health and pension plans. The Local never submitted this offer to the membership for ratification.[4] On April 24, 1985, Jacobs unilaterally implemented this offer. *See* Affidavit of Ronald Warren at 3–4, *reprinted in* Joint Appendix ("J.A.") 58–59.

A year later, on April 16, 1986, Jacobs made another "final offer" to the Local. This offer included wage increases but did not include the return of employees to the Local 639 health and pension plans. Jacobs stated that the offer would only stay open until May 4, 1986. Local 639 did not submit this offer for membership ratification. *See id.* at 6–7, *reprinted in* J.A. 61–62. On September 2, 1986, Jacobs informed the Local that the April 16 offer was "back on the table." Jacobs stated that this was its "last and final offer," and that it intended to implement the offer on September 9, 1986. *See* Letter from H. Lindley Grubbs, President, Jacobs Transfer, Inc., to Ronald Warren, Recording Secretary, Local 639 (Sept. 2, 1986), *reprinted in* J.A. 205. The Local did not submit this offer for ratification. On September 14, Jacobs unilaterally implemented this offer. *See* Affidavit of Ronald Warren at 7, *reprinted in* J.A. 62.

In January 1987, Ryder Truck Rental, Inc. ("Ryder") bought Jacobs. Sometime after November 1987, members of the Sears unit informed the Local that they wanted George

---

Union." *Id.* at 165, 103 S.Ct. at 2291 (internal quotations omitted).

2. The right of an employee to sue in federal court for a breach of the duty of fair representation is an implied right under the NLRA. As the Supreme Court stated in *DelCostello*:

The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*DelCostello*, 462 U.S. at 165 n. 14, 103 S.Ct. at 2291 n. 14 (quoting *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967)).

There is another type of "straight" duty of fair representation claim: one raised before the National Labor Relations Board ("NLRB") alleging

an unfair labor practice. The NLRB has repeatedly held that a breach of the duty of fair representation constitutes an unfair labor practice. *See id.* at 170, 103 S.Ct. at 2293–94. Although a duty of fair representation claim brought before the NLRB is not necessarily coterminous with one brought in federal court, *see Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 86–87, 110 S.Ct. 424, 435–37, 107 L.Ed.2d 388 (1989), they undeniably possess many similarities.

3. George's unit was known as the "Sears unit" because it provided service exclusively to Sears, Roebuck & Company.

4. Article XII of the International Brotherhood of Teamsters Constitution states that "when, in the judgment of the Local Union Executive Board, an employer has made a final offer of settlement, such offer must be submitted to the involved membership for a secret ballot vote...." International Brotherhood of Teamsters Amendments to Article XII, Sections 1, 2, and 3 (adopted Oct. 17, 1988), *reprinted in* Joint Appendix ("J.A.") 154; Constitution and Bylaws of the International Brotherhood of Teamsters art. XII, § 1(b) (1986), *reprinted in* J.A. 86.

on the negotiating committee. The Local refused to allow George to serve on the committee or attend negotiations. On October 20, 1988, Ryder made a "final offer" that included a wage increase but that did not return the employees to the Local 639 pension plan. The Local did not submit this offer for a ratification vote by the membership. *See id.* at 7–9, *reprinted in* J.A. 62–64.

On April 4, 1989, appellant filed suit against Local 639, raising various claims. George argued, *inter alia,* that the Local violated LMRDA section 101(a)(1)[5] and the duty of fair representation by failing to submit the final offers to the Local's membership for ratification, and by not permitting George to serve on the negotiating committee or attend negotiation meetings. George also argued that the Local violated LMRDA section 101(a)(2) by not permitting him to speak at union meetings.[6]

On June 28, 1990, the District Court granted summary judgment in favor of the Local. The District Court first stated that "substantial portions of George's complaint" were barred by the statute of limitations. Citing *DelCostello,* the District Court held that duty of fair representation claims are governed by the six-month statute of limitations of section 10(b) of the NLRA. Next, the District Court distinguished *Reed* and held that claims under section 101(a)(1) are also governed by the section 10(b) statute of limitations. It therefore held that all duty of fair representation and section 101(a)(1) claims that arose before October 4, 1988 were time barred. *See George & Cooper v. Local Union No. 639,* Civ. No. 89–0916–LFO, slip op. at 5–7, 1990 WL 140892 (D.D.C. June 28, 1990), *reprinted in* J.A. 243–45.

Although George's claim that the Local improperly excluded him from the negotiating committee arose before the six-month statute of limitations, the District Court nevertheless addressed this claim on the merits, and granted summary judgment in favor of the Local. The District Court found that there was a genuine issue of material fact regarding George's claim that the Local prohibited him from speaking at union meetings and, therefore, denied the Local's motion for summary judgment on this issue. Finally, the District Court granted summary judgment for the Local on all other claims, including George's claim that the Local violated section 101(a)(1) and the duty of fair representation by failing to submit the October 1988 offer for membership ratification. *See id.* at 8–16, *reprinted in* J.A. 246–54.

George filed two additional amended complaints with the District Court, raising claims that arose after he filed his original complaint. In particular, George alleged that the Local improperly issued him a "withdrawal card" and that it manipulated the rules of the referral hall in order to prevent him from regaining active union status. After discovery, the parties cross-moved for summary judgment. On June 8, 1993, the District Court granted summary judgment in favor of the Local on all remaining claims, including George's free speech claim, and dismissed the action. *See George & Cooper v. Local Union No. 639,* 825 F.Supp. 328 (D.D.C. 1993), *reprinted in* J.A. 635–53.

## II. ANALYSIS

The District Court ruled that the six-month statute of limitations of section 10(b) of the NLRA governs claims under LMRDA section 101(a)(1). This ruling was wrong as a matter of law; therefore, we must remand those section 101(a)(1) claims that the District Court held to be time barred. However, the District Court was correct to use the section 10(b) statute of limitations for the

---

5. Section 101(a)(1) states:
   Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1).

6. In addition, George alleged that the Local violated LMRDA and the duty of fair representation by: (1) insisting that the Sears unit employees be returned to the Local's health and pension plans; (2) threatening to disclaim, and then disclaiming, representation of the Sears unit; (3) improperly excluding non-members from its meetings; and (4) failing to release documents to George.

duty of fair representation claims, so we reject George's arguments on this point. As to George's other claims, we conclude that summary judgment was appropriate.

In *DelCostello v. International Brotherhood of Teamsters,* the Supreme Court considered the appropriate statute of limitations in a "hybrid" suit against an employer (under section 301 of the Labor Management Relations Act) and a union (a duty of fair representation claim). *See DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291. The Court noted that, although the general rule is to "borrow" a statute of limitations from state law, "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes," and when the federal rule is "a significantly more appropriate vehicle for interstitial lawmaking," the federal rule will apply. *See id.* at 172, 103 S.Ct. at 2294–95.

Because no state statute of limitations was appropriate, the Court in *DelCostello* looked to the six-month statute of limitations under section 10(b) of the NLRA. *See id.* at 163–69, 103 S.Ct. at 2289–93. The Court noted that section 10(b) provided a suitable analogy for two reasons. First, the Court noted that there is a "family resemblance" between unfair labor practice complaints arising under the NLRA and heard by the NLRB and duty of fair representation and section 301 claims heard in federal court. *See id.* at 170, 103 S.Ct. at 2293–94. Second, the Court noted the similarity of considerations relevant in an unfair labor practice claim (to which 10(b) applies) and a hybrid section 301/duty of fair representation claim: both involve a "balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." *Id.* at 171, 103 S.Ct. at 2294 (internal quotation omitted). Thus, the Court held

that hybrid section 301/duty of fair representation claims are governed by a six-month statute of limitations. *See id.* at 169–71, 103 S.Ct. at 2293–94.

In *Reed v. United Transportation Union,* the Supreme Court considered the applicable statute of limitations for LMRDA section 101(a)(2) claims in light of *DelCostello.*[7] The Court stressed that the general rule is to borrow a state statute of limitations, and that the practice of borrowing a period from federal law is a "closely circumscribed exception." *See Reed,* 488 U.S. at 324, 109 S.Ct. at 625. State statutes are to be used, the Court stated, "unless they frustrate or significantly interfere with federal policies." *Id.* at 327, 109 S.Ct. at 627.

The Court in *Reed* noted that the "core federal interest" furthered by section 101(a)(2)—"the interest in union democracy promoted by free speech and assembly rights of union members"—differs from the considerations embodied in the six-month statute of limitations of section 10(b). *See id.* at 327–31, 109 S.Ct. at 627–29. The Court acknowledged that there is a plausible argument that the concerns underlying section 10(b)—the interest in stable bargaining relationships and in private dispute resolution under collective bargaining agreements—are implicated in section 101(a)(2) claims, but stated that the relationship was too "tangential and remote" to borrow the 10(b) statute of limitations. *See id.* at 330–31, 109 S.Ct. at 628–29.

The Court in *Reed* also addressed petitioner's argument that section 101(a)(2) claims should be governed by the section 10(b) statute of limitations because they bear a "family resemblance" to unfair labor practice charges and claims that a union has breached its duty of representation, but rejected this argument:

7. Section 101(a)(2) states:
    Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertain-

ing to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
29 U.S.C. § 411(a)(2) (1994).

Even were it the case ... that Title I violations may constitute unfair labor practices and breaches of the duty of fair representation—questions ... upon which we express no opinion—we would still hold this resemblance inconclusive as regards the question whether § 101 actions should be governed by a state statute of limitations or by NLRA § 10(b). In contrast to the situation in *DelCostello,* an overlap between Title I violations and unfair labor practices or breaches of the duty of fair representation would not be attributable to similar federal policies underlying each of these areas of protection, for the policies behind Title I, on the one hand, and NLRA § 8(b) and the implied duty of fair representation on the other, are quite different.

*Id.* at 333 n. 7, 109 S.Ct. at 630 n. 7. Thus, the Court held that the statute of limitations for a section 101(a)(2) claim should be borrowed from state law. *See id.* at 334, 109 S.Ct. at 630–31.

Although the Court's holding in *Reed* focused on the statute of limitations for section 101(a)(2) claims, the decision strongly suggests that the same reasoning would hold for claims under section 101(a)(1):

One class of Title I actions may have a more direct effect on collective bargaining. Union members may attempt to challenge a collective-bargaining agreement by alleging that the union denied them the proper opportunity "to participate in the deliberations and voting" to ratify the agreement, in violation of LMRDA § 101(a)(1). We have no occasion in this case, which involves a § 101(a)(2) free speech claim, to decide what statute of limitations applies to other Title I actions. We note, nevertheless, that however direct an effect some Title I claims may have on the collective-bargaining agreement or on private dispute resolution, Title I claims all serve the core function of enhancing union democracy through enforcement of the rights of union members, *not* of protecting the integrity of collective bargaining or of grievance-and-arbitration procedures.

*Id.* at 331 n. 6, 109 S.Ct. at 629 n. 6 (citations omitted). Thus, the Court explicitly noted that the similarity of considerations that led it to use the section 10(b) statute of limitations for a hybrid section 301/duty of fair representation claim—*i.e.,* the interest in protecting the integrity of collective bargaining or of grievance-and-arbitration procedures—was *not* the central concern in Title I cases.

■ We believe that *Reed* compels the conclusion that claims under section 101(a)(1) are governed by the borrowed statute of limitations of state law, and not the six-month statute of limitations of section 10(b). Although the holding in *Reed* was addressed to section 101(a)(2) claims, we can find no reasonable way to distinguish section 101(a)(1) claims from the section 101(a)(2) claims considered in *Reed.* Indeed, as the *Reed* Court noted, sections 101(a)(1) and (a)(2) both "serve the core function of enhancing union democracy through enforcement of the rights of union members." *Id.* at 331 n. 6, 109 S.Ct. at 629 n. 6; *see also Finnegan v. Leu,* 456 U.S. 431, 435–36, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239 (1982) (stating that Title I "place[s] emphasis on the rights of union members to freedom of expression without fear of sanctions by the union," and that Title I was necessary "to further [LMRDA's] primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships"). While it is true that Title I actions might have some effect on the collective bargaining process, this effect does not go to the "core function" of the statute. *See Reed,* 488 U.S. at 331 n. 6, 109 S.Ct. at 629 n. 6.

We hold that section 101(a)(1) claims are governed by the borrowed statute of limitations of state law, and not the six-month statute of limitations of section 10(b). It is noteworthy that all of the circuits that have considered this question since *Reed* have come to the same conclusion. *See Allgood v. Elyria United Methodist Home,* 904 F.2d 373, 377–78 (6th Cir.1990); *Clift v. International Union, UAW,* 881 F.2d 408, 410–12 (7th Cir.1989); *see also Marshall v. Local Union No. 6,* 960 F.2d 1360, 1365–67 (8th Cir.1992). Accordingly, we remand George's claims that the Local violated section 101(a)(1) by failing to submit the April 1986

and September 1986 "final offers" for ratification. Because both sides seem to agree that a three-year personal injury statute of limitations would apply on remand, *see* Brief of *Amicus Curiae* at 25; Brief for the Appellees at 17 n.13, it appears that George's claim regarding the April 1985 offer is time barred. We do not remand George's claim that his exclusion from the negotiation committee violated his rights under section 101(a)(1); although the claim arose before October 4, 1988, the District Court nonetheless decided this claim on the merits.

■ The District Court also applied the section 10(b) statute of limitations to George's duty of fair representation claims. The trial court's judgment on this point was correct. This conclusion follows from a consideration of the two bases on which *DelCostello* rested. First, duty of fair representation claims clearly exhibit a "family resemblance" to unfair labor practice claims. As the Court stated in *DelCostello*:

> Even if not all breaches of the duty [of fair representation] are unfair labor practices ... the family resemblance is undeniable, and indeed there is a substantial overlap.... [D]uty of fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions—as are virtually all unfair labor practice charges made by workers against unions.

*DelCostello*, 462 U.S. at 170, 103 S.Ct. at 2293–94. Second, duty of fair representation claims, like unfair labor practice charges and the hybrid claims considered in *DelCostello*, involve the "balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." *Id.* at 171, 103 S.Ct. at 2294 (internal quotation omitted). This balance is implicated in every duty of fair representation case, because a duty of fair representation claim focuses on an allegation that a union has not fairly *represented* an employee in bargaining or grievance settlements. If the union is regulated in these contexts, the employer-union bargaining relationship is necessarily affected.

Thus, the District Court was correct to apply the six-month statute of limitations of section 10(b) to George's duty of fair representation claims. Other circuits that have considered this question have reached the same conclusion. *See Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1167 (5th Cir.1989); *Eatz v. DME Unit of Local Union No. 3*, 794 F.2d 29, 33 (2d Cir.1986); *Peterson v. Kennedy*, 771 F.2d 1244, 1251 (9th Cir.1985); *Erkins v. United Steelworkers of Am.*, 723 F.2d 837, 838–39 (11th Cir.1984); *see also Adkins v. International Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir.1985) (stating that section 10(b) applies "to all unfair representation claims, regardless of the nature or presence of the section 301 claim" (citation omitted)).

As to appellant's other claims, we conclude, after a *de novo* review of the record, *see Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994), that summary judgment was appropriate. We affirm the judgment in favor of the Local on these claims, substantially for the reasons given by the District Court.

### III. CONCLUSION

Because the District Court erred in applying the six-month statute of limitations of section 10(b) to George's LMRDA section 101(a)(1) claims, we remand those section 101(a)(1) claims that the District Court held to be time barred. As to George's other claims, we conclude that summary judgment in favor of the Local was appropriate.

*So ordered.*