**Michael Lee FINERTY,
et al., Petitioners,**

**v.**

**NATIONAL LABOR RELATIONS
BOARD, Respondent,**

**Communications Workers of
America, Intervenor.**

**No. 96–1348.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 22, 1997.

Decided June 3, 1997.

Glenn M. Taubman, Roslyn, NY, argued the cause and filed the briefs, for petitioners.

Jill A. Griffin, Attorney, National Labor Relations Board, argued the cause for respondent, with whom Howard E. Perlstein, Deputy Assistant General Counsel, Linda R. Sher, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, were on the brief. Frederick Havard, Supervisory Attorney, Washington, DC, entered an appearance.

James B. Coppess, Washington, DC, argued the cause, for intervenor Communications Workers of America, with whom Laurence S. Gold, was on the brief.

Before EDWARDS, Chief Judge, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This case involves the limitations on a union in collecting dues and initiation fees from nonmember bargaining unit employees pursuant to union-security clauses.

The Communications Workers of America ("CWA" or "Union") is an international labor organization representing over 500,000 employees in approximately 2,400 bargaining units in the United States and Canada. CWA bargaining units are concentrated in the telecommunications industry, but the union also represents employees working in the printing/publishing and health care industries and in state and local governments. In many of the collective bargaining agreements that it has negotiated, the CWA has union-security provisions requiring unit employees to pay an agency fee as a condition of employment. However, unit employees who are not members of the CWA are allowed to object to the payment of dues and fees expended by the Union on "noncollective-bargaining activities." In determining what amount to charge those who object, a single nationwide reduced fee is calculated for all objectors based on the CWA's chargeable versus nonchargeable national expenditures, without regard to the particular bargaining unit in which an objector is employed. Because the CWA's "reduced fee" is not calculated on a unit-by-unit basis, the disclosure report that the Union sends to objectors does not give a unit breakdown on the allocation of Union expenditures to the chargeable versus nonchargeable expense categories. The National Labor Relations Board ("NLRB" or "Board") found that CWA did not violate its duty of fair representation under section 8(b)(1)(A) of the National Labor Relations Act ("NLRA" or "Act") by calculating the reduced agency fee charged to objecting nonmember employees on a union-wide, rather than unit-by-unit, basis, or by failing to provide objectors with unit-by-unit financial disclosure reports.

The Board's findings are reasonable. In *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), the Supreme Court established that a union may charge objecting nonmember unit employees a pro rata share of the costs of chargeable activities of the national affiliate. *See id.* at 524, 111 S.Ct. at 1961–62. Thus, the Board's finding that the CWA's allocation of chargeable expenses on a union-wide, rather than unit-by-unit, basis is a logical outgrowth of *Lehnert* and suggests no violation of the Union's duty of fair representation. Moreover, judicial precedent supports the Board's finding that use of a "local presumption" in allocating expenses—*i.e.*, an assumption that allocation on a union-wide basis is equivalent to allocation on a unit-by-unit basis—is reasonable. Finally, we agree with the Board that unit-by-unit disclosure is not necessary to ensure that nonmembers are paying only for properly chargeable activities. In short, on the record before us, it is clear that we owe deference to the Board's decision. Accordingly, the petition for review is denied.

## I. BACKGROUND

### A. *Statutory Background*

Section 8(b)(1)(A) of the NLRA makes it an unfair labor practice for a union

to "restrain or coerce ... employees in the exercise of the rights guaranteed in [Section 7 of the NLRA]." 29 U.S.C. § 158(b)(1)(A) (1994). Section 7 of the NLRA affords employees the right to engage, or refrain from engaging, in activities in support of collective bargaining. 29 U.S.C. § 157 (1994). However, an employer and a union may contract to require as a condition of employment that unit employees maintain "membership" in the union, provided that membership is available to all and that it requires nothing more than "tender[ing] the periodic dues and the initiation fees uniformly required." 29 U.S.C. § 158(a)(3) (1994); *see also NLRB v. General Motors Corp.*, 373 U.S. 734, 742, 83 S.Ct. 1453, 1459, 10 L.Ed.2d 670 (1963).

■ The Supreme Court has held that the NLRA does not "permit[ ] a union, over the objections of dues-paying nonmember employees, to expend funds so collected on activities unrelated to collective bargaining, contract administration, or grievance adjustment." *Communications Workers of Am. v. Beck*, 487 U.S. 735, 738, 108 S.Ct. 2641, 2645, 101 L.Ed.2d 634 (1988). When such objections are received from nonmember fee-payers, the union must calculate "what proportion of [union] expenditures went to activities that could be charged to dissenters" and then make an appropriate reduction in the agency fee required of objecting nonmembers. *Ellis v. Brotherhood of Ry., Airline & Steamship Clerks, Freight Handlers, Express & Station Employe[e]s*, 466 U.S. 435, 457 n. 15, 104 S.Ct. 1883, 1897 n. 15, 80 L.Ed.2d 428 (1984).

## B. *Factual Background*

CWA is an international union representing approximately 558,000 employees in the United States and 4,000 employees in Canada. Approximately 440,000 of these employees work in some 600 different bargaining units in the telecommunications industry; approximately 90,000 employees work in some 300 state and local government bargaining units; and approximately 23,000 employees work in some 1,340 printing industry bargaining units. Altogether, CWA represents employees in approximately 2,400 different bargaining units.

CWA, not its local unions, is the certified bargaining representative for all employees in the 2400 bargaining units. CWA is divided into eight geographical Districts, which are administrative units of the International Union and not separate local organizations.

Many CWA bargaining agreements include agency shop clauses, which require covered employees, as a condition of employment, to pay an agency fee to the Union equal to normal membership dues. CWA has established a procedure through which nonmembers covered by such clauses can object to the payment of that portion of the agency fee that the Union uses to support activities that are unrelated to collective bargaining. Nonmember unit employees who object are allowed to pay a reduced fee, which is a prorated amount based on Union activities related to collective bargaining.

The Pacific Bell/Nevada Bell Agreement, at issue here, contains an agency shop clause that requires a fee of 1.3% of the employee's basic wage. When a nonmember unit employee objects, CWA's allocation of expenditures between those chargeable to the objector as related to collective bargaining and those that are not chargeable is based on union-wide CWA expenditures without regard to the particular bargaining unit of the objecting employee. In other words, the fee does not vary according to the objector's bargaining unit, industry, or employer.

From 1988 to 1991, various nonmember unit employees who pay agency fees to CWA filed unfair labor practice charges with the NLRB, alleging that CWA's procedure for handling nonmember objections was legally deficient in several ways. The NLRB General Counsel found merit in certain of these allegations and issued a consolidated complaint against CWA. The Union and the NLRB General Counsel settled all but two of the allegations.

The unsettled paragraphs of the complaint alleged that the procedure used by CWA to calculate the dues of objecting non-members violated the Union's duty of fair representation, in contravention of section 8(b)(1)(A) of the NLRA, in that:

(1) it fails to break down expenses into representational and nonrepresenta-

tional categories on a unit-by-unit basis in its disclosure statement to objecting nonmembers; and

(2) it charges objecting non-member employees for representational expenses not attributable to the unit in which they are employed.

*Communications Workers of Am. and Finerty,* 322 N.L.R.B. No. 22, at 2, *reprinted in* Joint Appendix ("J.A.") 146. The settlement agreements between the NLRB General Counsel and CWA provided that these two issues would be litigated in a test case, the instant action filed by petitioner Michael Finerty, an employee working in CWA's Pacific Bell/Nevada Bell Telephone bargaining unit.

The case was first heard by an administrative law judge ("ALJ"). Addressing the second issue first, the ALJ "[found] no merit to the General Counsel's contention that Respondents breached their duty of fair representation by charging objecting nonmembers for representational expenses not attributable [to] the unit in which said objectors are employed." *Id.* at 11, *reprinted in* J.A. 155. Accordingly, the ALJ recommended that this claim be dismissed. *Id.* at 12, *reprinted in* J.A. 156. Then, turning to the first issue, the ALJ held that, even though CWA "did not act in violation of Section 8(b)(1)(A) of the Act by charging objecting nonmembers for representational expenditures not directly attributable to their own bargaining units," the Union did breach its duty of fair representation in violation of section 8(b)(1)(A) of the Act "by ... allocating chargeable expenses on a national rather than unit-by-unit basis on the disclosure statements given to said individuals." *Id.* at 13, *reprinted in* J.A. 157.

The charging parties and the respondent unions—but not the NLRB General Counsel—filed exceptions to the ALJ's recommendations with the NLRB. Ruling on these exceptions, the Board "adopt[ed] the judge's dismissal of the chargeability allegation, but reverse[d] as to the allocation issue." *Id.* at 2, *reprinted in* J.A. 146. Accordingly, the Board "ordered that the amended consolidated complaint [be] dismissed in its entirety." *Id.* at 4, *reprinted in* J.A. 148.

## II. ANALYSIS

With respect to matters of statutory interpretation, we owe considerable deference to the Board's interpretation. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The Supreme Court has held that

> where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Under this principle, we have traditionally accorded the Board deference with regard to its interpretation of the NLRA as long as its interpretation is rational and consistent with the statute.

*NLRB v. United Food & Commercial Workers Union,* 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987) (internal citation omitted) (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82).

■ Petitioners claim that, by calculating the reduced agency fees charged to objecting nonmember unit employees on a union-wide, rather than unit-by-unit, basis, the Board erred in finding that CWA did not violate its duty of fair representation under section 8(b)(1)(A) of the NLRA. We disagree.

As the NLRA clearly does not speak precisely to this issue, we must defer to the Board's position if it reflects a reasonable construction of the statute. The simple question before the Board was whether the CWA violated section 8(b)(1)(A) by charging objecting nonmember employees an agency fee for representational expenditures not directly attributable to their own bargaining units. In this case, the Board held that CWA, *which is the designated bargaining agent for all of the affected employees in its approximately 2,400 different bargaining units,* did not violate its duty of fair representation by allocating chargeable expenses on a union-wide, rather than unit-by-unit, basis. *See Communications Workers of Am. and Finerty,* 322 N.L.R.B. No. 22, at 2 (1996), *reprinted in* J.A. 146. The Board's interpretation is reasonable.

In *Lehnert,* the Supreme Court established that a union "may charge objecting employ-

ees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities *were not performed for the direct benefit* of the objecting employees' bargaining unit," as long as two conditions are met: first, that there is "some indication" that the fee is for services that "may ultimately inure to the benefit of the members of the local union" and, second, that the union does not expend fees collected from objecting nonmembers on "bargaining activities wholly unrelated to the employees in their unit." 500 U.S. at 524, 111 S.Ct. at 1961 (emphasis added).

It is indisputable that, by pooling its resources on a union-wide basis, a union, which is the bargaining representative of *all* its members, provides some benefit to members of the various local unions. As the Court noted in *Lehnert,*

> The essence of the affiliation relationship is the notion that the parent will bring to bear its often considerable economic, political, and informational resources when the local is in need of them. Consequently, that part of a local's affiliation fee which contributes to the pool of resources potentially available to the local is assessed for the bargaining unit's protection, even if it is not actually expended on that unit in any particular membership year.

*Id.* at 523, 111 S.Ct. at 1961. The same rationale applies here.

The Board's finding is also supported by the court's judgment in *Price v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* 927 F.2d 88 (2d Cir.1991). In that case, the Second Circuit held that a union's use of a "local presumption" in allocating chargeable expenses—*i.e.,* "assum[ing] for accounting purposes that the allocation between chargeable and nonchargeable expenditures for the [overall union] is equivalent to the allocation for each of its ... local unions"—is reasonable. *See id.* at 93. The court noted that "the Supreme Court has repeatedly recognized that there are practical reasons why 'absolute precision' in the calculation of the charge to non-members cannot be 'expected or required.'" *Id.* at 94 (quoting *Chicago Teachers Union v.*

*Hudson,* 475 U.S. 292, 307 n. 18, 106 S.Ct. 1066, 1076 n. 18, 89 L.Ed.2d 232 (1986)). We agree.

We note that, in deciding this case, the Board did not have before it challenges to *specific* representational expenses of CWA. The Board noted that,

> because the amended consolidated complaint failed to identify specific representational expenses, including litigation expenses, as having been unlawfully charged to objectors, that issue is not before us.

*Communications Workers of Am. and Finerty,* 322 N.L.R.B. No. 22, at 3 n. 4 (1996), *reprinted in* J.A. 147. In other words, the Board assumed that all of CWA's pooled expenses were related to lawful representation activities and, thus, that they fell within the scope of permissible charges under section 8(b)(1)(A) of the NLRA. Because the instant case does not involve challenges to "specific representational expenses," the Board has not decided (1) whether some of the pooled charges may be impermissible (*e.g.,* charges attributable to charitable donations by the Union); or (2) whether some of the pooled charges may be collected only from employees in certain designated bargaining units (*e.g.,* money for strike funds that would be available to support employees in the private sector, but unavailable to employees in public sector units where strikes are unlawful). As the Board noted, the agency fees charged for specific representational expenses by CWA may be contested in a subsequent challenge proceeding. *See Communications Workers of Am. and Finerty,* 322 N.L.R.B. No. 22, at 4 (1996), *reprinted in* J.A. 148. This decision simply represents an initial finding that CWA's method of allocation is not *per se* unlawful.

▪ Finally, we hold that the Board reasonably concluded that the Union, by providing financial information disclosing the allocation of expenses on a union-wide, rather than unit-by-unit, basis, did not violate its duty of fair representation. This court has held that " '[b]asic considerations of fairness ... dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee.' " *Abrams v. Communications Workers of Am.,* 59 F.3d 1373, 1379 (D.C.Cir.1995) (quoting *Chicago Teach-*

*ers Union v. Hudson,* 475 U.S. 292, 306, 106 S.Ct. 1066, 1076, 89 L.Ed.2d 232 (1986)). Petitioners' claim would have some force only if CWA were required to calculate the objecting nonmembers' fees on a unit-by-unit basis. However, for the reasons discussed above, the duty of fair representation includes no such obligation. Thus, unit-by-unit financial disclosure is not necessary to ensure that nonmembers are paying only for properly chargeable activities. On this issue as well, we defer to the Board's interpretation as reasonable.

III. CONCLUSION

For the reasons discussed above, we deny the petition for review.