Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued February 7, 2003        Decided April 11, 2003

No. 01-1470

JOE JACOBY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA, AFL-CIO, LOCAL #342,
INTERVENOR

————

On Petition for Review of an Order of the
National Labor Relations Board

————

*Glenn M. Taubman* argued the cause and filed the briefs for petitioner.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Usha Dheenan*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Meredith L. Jason*, Attorney.

*John L. Anderson* argued the cause and filed the brief for intervenor.

Before: EDWARDS, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

Opinion concurring in the judgment filed by *Circuit Judge* HENDERSON.

EDWARDS, *Circuit Judge*: The dispute in this case arose when, due to an inadvertent error, Steamfitters Local Union No. 342 ("Local 342" or "Union") failed to assign petitioner Joe Jacoby to a job to which he was entitled according to the Union's hiring hall rules. Jacoby filed charges with the National Labor Relations Board ("NLRB" or "Board"), claiming that the Union violated §§ 8(b)(1)(A) and (2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(b)(1)(A) & (2), and breached its duty of fair representation ("DFR"). In its initial consideration of the case, the Board dismissed the complaint. Jacoby then sought review in this court and was successful in securing a remand of the case to the Board for further consideration. *Jacoby v. NLRB*, 233 F.3d 611, 617 (D.C. Cir. 2000) ("*Jacoby I*").

The court in *Jacoby I* directed the Board to analyze the complaint pursuant to a "heightened duty of fair dealing" standard. *Id.* After reconsidering the case, the Board again found no merit in the unfair labor practice ("ULP") charges and dismissed the complaint. In applying the "heightened duty of fair dealing" standard, the Board found that the Union's conduct was neither a breach of the DFR nor otherwise a violation of the NLRA. *See Steamfitters Local Union No. 342 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, AFL-CIO (Contra Costa Elec., Inc.) & Joe Jacoby, Supplemental Decision & Order,* 336 N.L.R.B. No. 44 (Sept. 28,

2001) ("*Remand Order*"), Joint Appendix ("J.A.") 142-48. Jacoby again seeks judicial review, contending that the Board's decision is inconsistent with the "heightened duty" standard and unreasonably departs from NLRB precedent. We disagree.

This case does not involve evidence that the Union acted with ill will, discrimination, unlawful favoritism, nor any other obviously unreasonable business practice. The record before us indicates only that, in a single instance, the Union failed to refer petitioner to a job because of an admitted mistake. On these facts, the Board reasonably concluded that the complaint did not establish a violation of the Act or a breach of the duty of fair representation. Accordingly, we deny the petition for review.

## I. BACKGROUND

### A. The Facts

The facts in this case are recounted in the Board's first decision, *Steamfitters Local Union No. 342 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, AFL-CIO (Contra Costa Elec., Inc.) & Joe Jacoby, Decision and Order*, 329 N.L.R.B. No. 65 (Sept. 30, 1999) ("*Initial Decision*"), J.A. 121-33, and they are not disputed. For 27 years, Joe Jacoby has worked as a pipefitter in northern California with union membership in Local 342. *Id.*, slip op. at 1, J.A. 121. Pursuant to a contract with Contra Costa Electric, Inc., Local 342 retains the exclusive right to assign job-seekers to various work sites, including the Tosco Refinery in Martinez, California. In 1994, the Union agent with the responsibility for managing this hiring hall arrangement was Larry Blevins. *Id.* Under the hiring hall's referral system, Local 342 would assign available workers to jobs on the basis of established priority categories. Those individuals with both an advanced skill level and significant prior work experience, like Jacoby, were in the highest priority category. *Id.*

Jacoby enrolled in the Union's referral program on December 21, 1994. *Id.* The number of employment openings at the Tosco Refinery increased in the weeks after Jacoby registered. However, Jacoby did not receive an assignment and several other workers – all with lower priority groupings than petitioner – were referred to the facility. *Id.* Due to an inadvertent administrative error, Union records incorrectly indicated that Jacoby already had been dispatched to a job. As a result, Jacoby was not referred to the Tosco Refinery. Jacoby discovered this mistake and, after advising Blevins about the situation, petitioner received a referral to the Tosco Refinery project on February 17, 1995. *Id.*

### B. Board Proceedings

Claiming injury for the period when he was temporarily unemployed due to the clerical error, Jacoby filed an ULP charge with the Board on March 9, 1995. NLRB General Counsel subsequently issued a complaint, alleging that Local 342 had breached its DFR and had violated §§ 8(b)(1)(A) and (2) of the NLRA. *Initial Decision*, slip op. at 11, J.A. 131; *see* 29 U.S.C. §§ 158(b)(1)(A) & (2). Specifically, the General Counsel claimed that the Union's mistake in the job assignment process was an ULP because it departed from established hiring hall rules. Following an evidentiary hearing, an administrative law judge ("ALJ") ruled in favor of Jacoby. *Initial Decision*, slip op. at 12, J.A. 132. The judge concluded that the Union's failure to refer petitioner in a timely manner was illegal and that negligence was not a viable defense. The ALJ chiefly relied on a Board case that upheld a DFR charge for negligent conduct under similar circumstances. *Id.*; *see Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 118, AFL-CIO (California Erectors, Bay Area, Inc.)*, 309 N.L.R.B. 808 (1992) ("*California Erectors*").

The Board rejected the ALJ's determination, holding that the judgment in *California Erectors* was foreclosed by contrary Supreme Court precedent. *Initial Decision*, slip op. at 2, J.A. 122. The Board explained that the Court had adopted a "highly deferential standard" for assessing union conduct in

*United Steelworkers of America v. Rawson*, 495 U.S. 362 (1990), and in *Air Line Pilots Association v. O'Neill*, 499 U.S. 65 (1991). Under the standard of conduct described in those cases, the Board reasoned, petitioner had to allege more than simple negligence to show that the Union had breached the DFR:

> We read these decisions together to mean that "mere negligence" in the operation of an exclusive hiring hall does not give rise to a claim for breach of the [DFR], even by an applicant who loses an employment opportunity as a result of the union's mistake.

*Initial Decision*, slip op. at 2, J.A. 122. On that basis, the Board overruled *California Erectors*. The Board also found that Jacoby's claim presented no other separate NLRA violation, because a negligent error "does not constitute a display of 'union power' which would carry a coercive message that could reasonably be thought to encourage union membership." *Id.* at 4, J.A. 124. Accordingly, the Board dismissed petitioner's complaint.

On review of the Board's decision, this court remanded. *Jacoby I*, 233 F.3d at 611. The court held that the Board had erred in interpreting the cited Supreme Court decisions and by ignoring other relevant case law. The *Jacoby I* court found that neither *Rawson* nor *O'Neill* was applicable to the hiring hall context, where the union's distinct role as both employer and bargaining representative carries a special obligation to exercise power fairly. *Id.* at 616; *see also Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 89 (1989) (stating that the union's responsibility in a hiring hall setting fairly increases rather than decreases). Reviewing this court's discussion of the DFR in cases in which the operation of a hiring hall was at issue, *see, e.g., Boilermakers Local No. 374 v. NLRB*, 852 F.2d 1353 (D.C. Cir. 1988), the *Jacoby I* court found that a "heightened duty of fair dealing" was the appropriate standard. 233 F.3d at 617. The court therefore remanded the case and instructed the Board to reevaluate the Union's conduct based on the

heightened duty standard and to consider whether the facts otherwise amounted to a violation of the NLRA.

After accepting additional submissions by the parties, the Board issued the *Remand Order* on September 28, 2001. The Board acknowledged that the "heightened duty" standard applied, but again dismissed Jacoby's complaint. *Remand Order*, slip op. at 3, J.A. 143. After analyzing early references to the DFR in NLRB precedent and in statements from the courts, the Board concluded that deliberate wrongdoing is required to establish a breach of duty claim:

> The descriptive terms used to describe breaches of duty – "arbitrary," "invidious," "discriminatory," "hostile," "unreasonable," "capricious," "irrelevant or unfair considerations," without "honesty of purpose" – indicate deliberate conduct that is intended to harm or disadvantage hiring hall applicants. They all imply that the union is either using its power to control referrals against the interests of individual applicants or classes of applicants, or that it may do so at any time, at its discretion.

*Id.* at 4, J.A. 144. The Board thus held that simple negligence is insufficient to support a DFR claim, even under the "heightened duty" standard: "However heightened the duty, we do not believe it reaches so high." *Id.* at 5, J.A. 145. Further, the Board confirmed its view that the Union's error did not otherwise violate the NLRA because the inadvertent and unplanned conduct could not reasonably enhance the Union's power to recruit through coercion. *Id.* at 5-6, J.A. 145-46.

This petition for review followed.

## II. DISCUSSION

The issue driving this case is a simple one: whether one act of simple negligence or inadvertent error by a union in its administration of an exclusive hiring hall results in a breach of the DFR or otherwise violates the NLRA. As the record makes clear, this case does not involve any allegation that the

Union acted with ill will, discrimination, unlawful favoritism, nor any other obviously unreasonable business practice. The record before us indicates only that, in one instance, Local 342 failed to refer petitioner to a job because of an admitted, albeit unintended, mistake. On these facts, we uphold the Board's decision that the Union's mistake did not amount to a violation of the NLRA or result in a breach of the DFR.

## A. Statutory Violations

Petitioner asserts that, regardless of whether the Union's conduct breached the DFR, the Union failed to follow its referral system and thereby independently violated the NLRA. Section 7 of the NLRA guarantees that employees enjoy "the right to . . . form, join, or assist labor organizations . . . and . . . to refrain from any or all of such activities." 29 U.S.C. § 157. Section 8(b)(1)(A) of the statute implements this guarantee by making it an ULP for a union to "restrain or coerce" employees in the exercise of their § 7 rights. *Id.* § 158(b)(1)(A). And § 8(b)(2) of the Act makes it illegal for a union to "cause or attempt to cause an employer to discriminate against an employee" in a manner that encourages or discourages union membership. *Id.* § 158(b)(2); *see also id.* § 158(a)(3). The Board found that the Union's disputed, unintentional conduct did not violate either statutory provision. We agree.

As the Board found, the inadvertent clerical error in this case failed to signal that "union considerations [would] play a part in determining who receives favorable treatment in referrals." *Remand Order,* slip op. at 5, J.A. 145 (citation omitted). Therefore, the Union's single mistake in managing its hiring hall did not begin to approach conduct that is proscribed by § 8(b)(1)(A) and § 8(b)(2). *See, e.g., Plumbers Local 52 (Aycock, Inc.)*, 282 N.L.R.B. 1228, 1232 (1987) ("[I]f a union hiring hall voluntarily chooses to implement a system of recordkeeping to ensure to its membership a means of monitoring its referral rights, that union should not be prejudiced by finding it in violation of the Act for every possible mistake it might make in administering that system."). Petitioner offers nothing to suggest that the Board erred in

rejecting the § 8(b)(1)(A) and § 8(b)(2) charges. This is hardly surprising, because the record is devoid of any evidence indicating that the Union acted to "restrain or coerce" employees or to cause an employer to discriminate against them. Indeed, petitioner's arguments to the court on these ULP charges seemed half-hearted at best, with Jacoby's petition for review primarily focused on the alleged breach of the DFR. We therefore uphold the Board's decision on the cited ULP claims (insofar as they are distinct from the DFR charge) and turn now to the DFR claim.

## B. Duty of Fair Representation

The DFR finds no precise reference point in the express terms of the NLRA. Rather, the DFR is mostly a creation of the courts. *See generally* MARTIN H. MALIN & LORRAINE A. SCHMALL, INDIVIDUAL RIGHTS WITHIN THE UNION 346-493 (1988) (discussing Supreme Court and circuit court DFR cases); LEE MODEJESKA, NLRB PRACTICE 409-16 (1983) (reviewing early Supreme Court DFR cases); JEAN T. MCKELVEY, ED., THE DUTY OF FAIR REPRESENTATION (1977) (compiling scholarly views on DFR doctrine). The Supreme Court long ago held that the Railway Labor Act and the NLRA impose on labor organizations – acting under the authority of these statutes as the exclusive agents for employees in designated collective bargaining units – the duty to represent all employees fairly. *See, e.g., Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 204 (1944) (the DFR requires a union to act "without hostile discrimination, fairly, impartially, and in good faith"); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953) (unions must make an "honest effort to serve the interests of all . . . members, without hostility to any"). Following *Steele* and *Huffman*, the Court has elaborated on the DFR using similar language in cases involving both the processing of grievances and the negotiation of collective bargaining agreements. *See, e.g., Breininger*, 493 U.S. at 78-90; *Hines v. Anchor Motor Freight*, 424 U.S. 554, 564-67 (1976); *Vaca v. Sipes*, 386 U.S. 171, 183 (1967). In *Vaca*, the Court aptly characterized the DFR as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." 386 U.S. at 182.

Although the DFR did not initially emanate as an ULP under the NLRA, the Board eventually came to accept the idea that, separate and apart from DFR actions that commence with a lawsuit, the Board could enforce a DFR pursuant to its authority to identify and remedy ULPs under the NLRA. The Board first enunciated a DFR under the NLRA in *Miranda Fuel Co., Inc.*, 140 N.L.R.B. 181 (1962), *enforcement denied*, 326 F.2d 172 (2d Cir. 1963). There, the Board held that a union breaches the DFR by "taking action against any employee upon considerations or classifications which are irrelevant, invidious or unfair." *Id.* at 185. In both *Vaca*, 386 U.S. at 181, and *Humphrey v. Moore*, 375 U.S. 335, 344 (1964), the Supreme Court noted, without approval or disapproval, the DFR doctrine enunciated by the Board in *Miranda Fuel*. The Court merely observed that, "when the Board declared in *Miranda Fuel* that a union's breach of its duty of fair representation would . . . be treated as an unfair labor practice, the Board adopted and applied the doctrine as it had been developed by the federal courts." *Vaca*, 386 U.S. at 181 (citation omitted).

The Union, as intervenor, argues that there can be no breach of the DFR under the NLRA if a union has not violated the literal terms of § 8(b)(1)(A) or § 8(b)(2). In other words, the Union contends that the DFR does not create a substantive duty under the NLRA apart from the specific ULPs listed in the Act. This is an interesting proposition. The Board routinely characterizes a breach of the DFR as an ULP, yet the denial of "fair representation" is not specifically listed as an ULP under the Act. And in those cases in which the Board finds a union to have breached its duty of fair representation, the agency cites either § 8(b)(1)(A) or § 8(b)(2), in conjunction with § 7, as the basis for its holding. How then can there be a breach of the DFR, the Union asks, if there has been no violation of the literal terms of either § 8(b)(1)(A) or § 8(b)(2)?

In *most* cases – as is true here – there is no independent breach of the DFR when the Union's conduct does not otherwise violate the literal strictures of § 8(b)(1)(A) or § 8(b)(2). But this begs the question, for it is not clear that

in *all* cases a breach of the DFR is based on conduct that violates the literal terms of § 8(b)(1)(A) or § 8(b)(2). Rather, it appears that, in its DFR jurisprudence, the Board has tended to *start with § 7*, not § 8(b)(1)(A) or § 8(b)(2). In *Miranda Fuel*, for example, the Board ruled that, under § 7, bargaining unit employees have the right to be free from unfair, irrelevant, or invidious treatment by their exclusive bargaining agent in matters affecting their employment. 140 N.L.R.B. at 185-86. A union's breach of that right is an interference with § 7 rights and, thus, a violation of § 8(b)(1)(A). *Id.* There is a bit of analytical mumbo jumbo in this line of reasoning, but it allowed the Board to create a DFR under the NLRA corresponding to the Court's decisions in *Steele* and *Huffman*, and then characterize breaches of the DFR as ULPs.

The substantive reach of the DFR is not precisely coterminous with the rights protected by § 8(b)(1)(A) or § 8(b)(2); rather, the DFR and the statutory ULPs seem to form interlocking rings, with broad areas of overlap. And in those small areas in which the DFR does not precisely fit within the literal confines of § 8(b)(1)(A) or § 8(b)(2), the Board implicitly relies on the *Miranda Fuel* "interference with § 7 rights" foundation and describes the DFR breach as a violation of § 8(b)(1)(A). *See, e.g., Transit-Mix Concrete Corp.*, 267 N.L.R.B. 1130 (1983), *enf'd.*, 740 F.2d 141 (2d Cir. 1984); *E. L. Mustee & Sons, Inc.*, 215 N.L.R.B. 203 (1974); *Magma Copper Co.*, 200 N.L.R.B. 40 (1972); *Port Drum Co.*, 170 N.L.R.B. 555 (1968).

In any event, although the Union has raised an interesting point in questioning whether there can be a breach of the DFR *sans* a literal violation of § 8(b)(1)(A) or § 8(b)(2), we need not tarry further on this issue. It is too late in the day for this court to rip apart the fabric of DFR jurisprudence under the NLRA. *Miranda Fuel* and subsequent decisions have inferred a basis for the DFR from § 7, coupled with §§ 8(b)(1)(A) or (b)(2). *RPM Erectors, Inc.*, 266 N.L.R.B. 154 (1983); *Transit-Mix Concrete Corp.*, 267 N.L.R.B. at 1131. And the lower federal courts now routinely accept the Board's jurisdiction to rule on DFR charges as part of the

agency's statutory enforcement authority. *See, e.g., Finerty v. NLRB*, 113 F.3d 1288 (D.C. Cir. 1997).

The DFR is thus regulated in a sort of "dyarchy," with the Board and the courts sharing enforcement responsibilities. *See Jacoby I*, 233 F.3d at 614. As a result, applications of the DFR may vary depending upon the place in which the underlying complaint originates. This court has noted that "a [DFR] claim brought before the NLRB is not necessarily coterminous with one brought in federal court" even though "they undeniably possess many similarities." *George v. Local Union No. 639, Int'l Bhd. of Teamsters*, 100 F.3d 1008, 1009 n.2 (D.C. Cir. 1996) (citation omitted).

Notwithstanding this "dyarchy," the courts have jealously guarded their jurisdiction over DFR cases. This has occurred in part to ensure that individual employees retain all of the protections that the DFR is designed to afford. As the Supreme Court noted in *Vaca*:

> Were we to hold . . . that the courts are foreclosed by [*Miranda Fuel*] from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint. The existence of even a small group of cases in which the Board would be unwilling or unable to remedy a union's breach of duty would frustrate the basic purposes underlying the duty of fair representation doctrine.

386 U.S. at 182-83 (citation and footnote omitted).

The net effect of these developments is that the courts are not constrained or bound by NLRB precedent with respect to DFR claims that initiate with a lawsuit. By contrast, when the NLRB initially hears a DFR claim, and the matter in dispute involves a question of statutory interpretation, we owe considerable deference to the Board's interpretation. *See Chevron U.S.A. Inc. v. Natural Resources Defense Coun-*

*cil, Inc.,* 467 U.S. 837, 842-45 (1984). The Supreme Court has held that where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Under this principle, the Board is entitled to deference with regard to its interpretation of the NLRA as long as that interpretation is rational and consistent with the statute. *NLRB v. United Food & Commercial Workers Union Local 23,* 484 U.S. 112, 123 (1987).

The instant case commenced as a proceeding before the NLRB. We therefore owe deference to the Board's statutory construction if it is permissible, *Chevron*, 467 U.S. at 842-45, and we owe deference to the Board's judgment if it is supported by substantial evidence, *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951), reflects reasoned decision making, *Allentown Mack Sales and Service, Inc. v. NLRB*, 522 U.S. 359, 374-75 (1998), and is not otherwise inconsistent with the law, *NLRB v. United Food & Commercial Workers Union*, 484 U.S. at 123. The evidence in this case is undisputed, so there is no real issue regarding the Board's findings of fact. Rather, petitioner claims that the Board's decision is infirm because it is inconsistent with the "heightened duty" standard and it unreasonably departs from NLRB precedent. We disagree.

We are aware of no judicial decision – and petitioner cites us to none – in which a court has held that a union violates its duty of fair representation if it commits a single act of simple negligence or inadvertent error in the administration of an exclusive hiring hall. Indeed, we are unaware of *any case* in which a court has found a breach of the DFR based on a single act of simple negligence, where the record is devoid of evidence that the union acted pursuant to ill will, discrimination, unlawful favoritism, or other obviously unreasonable business practices. Therefore, there was no obvious legal impediment to the Board's holding in this case. The only intriguing question in this case is whether the Board's holding satisfies the "heightened duty of fair dealing" standard, which

is unique to the hiring hall context. This is the question that prompted the remand in *Jacoby I*.

In *Boilermakers*, 852 F.2d at 1353, and later in *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 34 (D.C. Cir. 1995), this court set forth the parameters of the heightened duty standard in hiring hall cases. The court made it clear that "a union commits an unfair labor practice if it administers the exclusive hall arbitrarily or without reference to objective criteria and thereby affects the employment status of those it is expected to represent." *Boilermakers*, 852 F.2d at 1358. Under this precept, a union must operate a hiring hall with "objective, consistent standards," *Pipe Fitters*, 50 F.3d at 30, without discrimination, and without "caus[ing] or attempt[ing] to cause an employer to discriminate against an employee" in regard to employment so as to encourage union membership. *See* 29 U.S.C. § 158(b)(2). The heightened duty standard does not mean, however, that a single, unintentional error by a union is a breach of the DFR. Nothing in *Boilermakers* or *Pipe Fitters* suggests that, where a hiring hall is administered pursuant to objective and consistent standards, an act of simple negligence, unaccompanied by ill will, discrimination, unlawful favoritism, or other obviously unreasonable business practices, violates the "heightened duty" standard.

The Board determined on remand in this case that an error resulting from simple, not gross, negligence, without evidence of bad faith, discrimination, or untoward business practices, did not constitute a breach of the DFR. We can find no basis for second-guessing this judgment, for it is eminently reasonable and well within the legal parameters enunciated in *Boilermakers* or *Pipe Fitters*. One act of simple negligence does not come close to violating the "heightened duty" standard. The Union had a clear set of objective rules in place that provided legitimate and fair means of assigning jobs in the hiring hall. The objective standards are not in dispute or otherwise challenged. The misstep about which Jacoby complains is attributable to nothing more than a simple administrative mistake, and the Union corrected that mistake as soon as it became aware of the problem. Under these circum-

stances, the Board did not err in holding that the Union did not breach its duty of fair representation.

Petitioner argues that the Board's application of the "heightened duty" standard affords no greater protection than the more traditional definitions of the DFR. We disagree. Traditionally, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190 (citation omitted). In other words, the DFR generally requires the union to serve the interests of all bargaining unit employees without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1988) (quoting *Vaca*, 386 U.S. at 177). Under a heightened duty standard, however, a union might violate the DFR in instances of gross negligence or in circumstances in which its hiring hall business practices are so reckless as to cause foreseeable adverse affects on the employment status of those persons whom the union is expected to represent fairly. The heightened duty of fair dealing requires a union to operate a hiring hall using "objective criteria" and "consistent standards." It does not, however, hold a union strictly liable for inadvertent mistakes when it is otherwise operating its hiring hall pursuant to the prescribed criteria and standards. Petitioner's view would set the standard of conduct so high as to make anything less than a flawlessly run system an actionable offense. Perfection in administrative operations is a laudable aspiration, but it is not mandated by the law.

Finally, petitioner contends that, because the Board's decision departs from NLRB precedent, no deference is due to the agency in this case. In support of this argument, petitioner cites the Board's decision in *California Erectors*. But, as noted above, the Board overruled *California Erectors* and reasonably concluded that, in light of the overall goals of the statute, the facts here cannot constitute a breach of the DFR. The Board's reconsideration of its case law reflects a permissible construction of the Act. The "heightened duty" standard emanating from *Boilermakers* does not compel a finding

that a single act of simple negligence results in a breach of the DFR, so the Board was not foreclosed from clarifying the substantive reach of the DFR as it did in this case. We are therefore required by *Chevron* to defer to Board's reasonable and permissible interpretation of the Act.

The Union in this case made a simple mistake, erring in good faith. The Board was well within the bounds of the law and sound judgment in concluding that a single error in the hiring hall setting did not breach the DFR. We reject petitioner's arguments to the contrary.

## III.   CONCLUSION

The petition for review is hereby denied.

1

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in the judgment:

While I concur, I by no means believe the issue is as open-and-shut as the substantive portion of the majority's opinion suggests. *See* Majority Op. at 12-15. Plainly, *Jacoby I* did not find it so–*Jacoby I* declined to accept the Board's position that as a matter of law "merely negligent conduct can never breach the duty of representation in any context, including that of the hiring hall." *Jacoby v. NLRB*, 233 F.3d 611, 616 (D.C. Cir. 2000). Nor did the Board, which apparently deemed its disposition here in conflict with its own decision in *Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers Local 118 (California Erectors)*, 309 N.L.R.B. 808 (1992)–"a Board case that upheld a [Duty of Fair Representation] charge for negligent conduct under similar circumstances." Majority Op. at 4.