# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.
Clerk

Elisabeth A. Shumaker
Chief Deputy Clerk

March 2, 1998


**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 96-3147, *Witt v. Roadway Express*
February 27, 1998


The published opinion contains a typographical error on page 7, in the sixth sentence of the paragraph continued from page 6, toward the center of the slip opinion page. The sentence containing the error reads as follows:

He is entitled to the reasonable inference that "the middle of March" means the 15th of March, which is a month of thirty days.

The corrected sentence should read:

He is entitled to the reasonable inference that "the middle of March" means the 15th of March, which is a month of thirty-one days.

Please make the appropriate correction to your copy of the opinion.

Very truly yours,

Patrick Fisher,
Clerk


By:

Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CHARLES JAMES WITT,

     Plaintiff-Appellant,

v.

ROADWAY EXPRESS,
JIM KASPERSKI,
TEAMSTERS LOCAL No. 41,
and WARREN STEVENS,

     Defendants-Appellees.

No. 96-3147

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-2247-GTV)

---

Robert S. Ukeiley, Boulder, Colorado, for Plaintiff-Appellant.

Donald R. Aubry (John P. Hurley and Steven A. Fehr, with him on the brief),
Kansas City, Missouri, for Defendants-Appellees Teamsters Local No. 41 and
Warren Stevens.

Daniel B. Denk (Carl A. Gallagher with him on the brief), Kansas City, Kansas,
for Defendants-Appellees Roadway Express and Jim Kasperski.

---

Before ANDERSON, EBEL, and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

Plaintiff-Appellant Charles James Witt brought this action against Defendants-Appellees Roadway Express and the Teamsters, alleging racial discrimination in violation of Title VII and § 1981, common law harassment, and unfair representation by the union. The district court disposed of Mr. Witt's claims as follows: (1) it granted summary judgment against Mr. Witt on the Title VII claims against both Roadway and the Teamsters, on the basis that they were untimely; (2) it applied a six-month limitation period to Mr. Witt's fair representation claim, and granted summary judgment against Mr. Witt because the claim was time-barred; (3) it dismissed Mr. Witt's state law harassment claims under Fed. R. Civ. P. 12(b)(6), on the ground that the members of the Teamsters who harassed Mr. Witt were not acting as agents or representatives of the union; and (4) after allowing the § 1981 claims to proceed to a jury trial, at the close of the plaintiff's evidence the court granted judgment as a matter of law in favor of defendants, ruling that the instances of discrimination proved at trial were not sufficiently race-based or pervasive to support a verdict in Mr. Witt's favor. See Witt v. Roadway Express, 880 F. Supp. 1455, 1461-65 (D. Kan. 1995). Mr. Witt appeals each ruling. We exercise jurisdiction under 28 U.S.C. § 1291, affirm in part, reverse in part, and remand.

## Background

Our review of each of the district court's rulings requires us to view the

allegations and evidence in the light most favorable to the non-movant. See Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997) (reviewing grant of summary judgment); Grossman v. Novell, Inc., 120 F.3d 1112, 1118 (10th Cir. 1997) (reviewing Rule 12(b)(6) dismissal); Taylor v. Cooper Tire & Rubber Co., No. 96-4084, 1997 WL 755274, at *3 (10th Cir. Dec. 5, 1997) (reviewing judgment as a matter of law). Accordingly we present the factual background in the light most favorable to the plaintiff, drawing all reasonable inferences in his favor.

Mr. Witt, an African-American, worked for Roadway Express as a truck driver from 1987 to 1993. After a move from Memphis to Kansas City, his work situation began to deteriorate. Mr. Witt attempted to discuss with the local Teamsters business agent a problem he had had in Memphis, but was told by Mr. Stevens, the shop steward, not to bring his problems to the business agent. When Mr. Witt requested that the Teamsters in Kansas City recognize his previous time in the union in Memphis, Mr. Stevens told Mr. Witt to forget about his previous time and start over by paying his initiation fee again. Mr. Witt testified that good trucking runs were consistently given to drivers more junior than he because of his color. When he approached Mr. Stevens about this he was told to "leave it alone." R. Doc. 128 at 119. Mr. Stevens refused to question Roadway or to file a grievance on Mr. Witt's behalf.

Dissatisfied with union representation, Mr. Witt revoked his authorization to have his union dues deducted from his paycheck. Mr. Stevens and other union members began pressuring Mr. Witt to have his dues deducted. On two separate occasions he found notes on the windshield of his car at work, written on letterhead of the Knights of the Ku Klux Klan. One said, "Pay your dues, n——." II Supp. R. 91. The words of the second note on Klan letterhead were washed away by rain. Mr. Witt's car was vandalized on seven or eight occasions in the Roadway parking lot. His home was burglarized, but the only things taken were papers having to do with his problems with Roadway and the Teamsters. He received threats and racial slurs from other named drivers on occasion between 1990 and 1992. In one incident in Burlington, Colorado, several drivers called him into a motel room and attempted to coerce him into dropping his complaints against the union, calling him a n—— and referring to his being black and needing to leave things alone.

When Mr. Witt complained to officials at Roadway and the Teamsters, he received no response. Toward the end of 1992, when Mr. Witt complained about an unfair trucking assignment, a Roadway coordinator said, "F— that n——, he don't have no rights." R. Doc. 128 at 111. On another occasion in 1993, when Mr. Kasperski telephoned Mr. Witt's home, Mr. Witt's girlfriend took the call. When she told Mr. Kasperski that Mr. Witt was not home, Mr. Kasperski became

hostile and said, "Huh. Well where's this n—— at?" III Supp. R. 366.

Mr. Witt filed a complaint with the Kansas Human Rights Commission, which forwarded it to the Equal Employment Opportunity Commission (EEOC). The EEOC sent Mr. Witt separate right-to-sue letters, both dated January 27, 1994, regarding Roadway and the Teamsters. They were mailed January 27 and 28, respectively, without return receipts requested. Although Mr. Witt received the Roadway right-to-sue letter in late January or early February, 1994, he stated in an affidavit that he did not receive the right-to-sue letter regarding the Teamsters "until the middle of March." I R. doc. 38, exh. A, ¶ 10.

Mr. Witt's Title VII suit against the Teamsters was deemed to have been filed June 13, 1994. The Teamsters moved for summary judgment, arguing the district court should apply a presumption that Mr. Witt received the right-to-sue letter within five days of its mailing. If Mr. Witt received the letter five days after January 28, 1994, then his ninety day period to file suit expired May 3, 1994, and his June 13 lawsuit against the Teamsters was untimely. See 42 U.S.C. § 2000e-5(f)(1) (1994). If, however, Mr. Witt received the right-to-sue letter in mid-March, as his affidavit states, then his suit was timely. The district court applied a five-day presumption of receipt and found that the Title VII claim against the Teamsters was filed beyond the ninety-day limit of 42 U.S.C. § 2000e-5(f)(1). The district court refused to equitably toll the ninety-day limitations

period for both the Teamsters and the Roadway Title VII claims.

Discussion

We review each issue in this appeal de novo.  See Bell, 127 F.3d at 1228;

Grossman, 120 F.3d at 1118; Coleman v. B-G Maintenance Mgmt. of Colo., Inc.,

108 F.3d 1199, 1205 (10th Cir. 1997).

Summary judgment is appropriate only when the evidence, including any

affidavits, viewed in the light most favorable to the non-movant, demonstrates

that "there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "material"

fact is one "that might affect the outcome of the suit under the governing law,"

and a "genuine" issue is one for which "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  In applying these standards we draw all

reasonable inferences from the evidence in favor of the non-movant.  See

Aramburo v. Boeing Co., 112 F.3d 1398, 1402 (10th Cir. 1997).

A.  Title VII

Under 42 U.S.C. § 2000e-5(f)(1) a complainant has ninety days in which to

file suit after receipt of an EEOC right-to-sue letter.  Mr. Witt argues that his

affidavit, stating that he received the right-to-sue letter regarding the Teamsters in mid-March, creates a genuine issue of material fact precluding summary judgment. We agree. The ninety-day limit begins to run on the date the complainant actually receives the EEOC right-to-sue notice, see Williams v. Southern Union Gas Co., 529 F.2d 483, 487 (10th Cir.), cert. denied, 429 U.S. 959 (1976), making that date a material fact. Mr. Witt has created a genuine issue as to the date of receipt by submitting evidence on which a reasonable jury could return a verdict for him. He is entitled to the reasonable inference that "the middle of March" means the 15th of March, which is a month with thirty-one days. If he received the right-to-sue letter March 15, then his complaint was due June 13, the day it was deemed filed. Even if he received the letter on March 13 or 14, his complaint would still have been timely on June 13, because June 11 and 12 were a Saturday and Sunday. See Fed. R. Civ. P. 6(a).

Teamsters Local No. 41 argues that its certified mail receipt, indicating the right-to-sue letter was mailed January 28, 1994, entitles it to a presumption that Mr. Witt received the letter within five days. A rebuttable presumption of receipt does arise on evidence that a properly addressed piece of mail is placed in the care of the postal service. See Nikwei v. Ross School of Aviation, 822 F.2d 939, 941 (10th Cir. 1987); Godfrey v. United States, 997 F.2d 335, 338 (7th Cir. 1993); Anderson v. United States, 966 F.2d 487, 491 (9th Cir. 1992). Because the

presumption is rebuttable, however, evidence denying receipt creates a credibility issue that must be resolved by the trier of fact. See Rosenthal v. Walker, 111 U.S. 185, 193-94 (1884); Anderson, 966 F.2d at 491-92; 9 Wigmore, Evidence § 2519 (Chadbourn rev. 1981 and Best Supp. 1997). Mr. Witt has presented evidence which could reasonably be found to rebut the presumption.

The district court wrote, "Plaintiff has not presented any evidence to rebut the presumption or to establish the actual receipt date." Witt, 880 F. Supp. at 1461. On the contrary, Mr. Witt has done just that. It was error for the court to ignore Mr. Witt's affidavit. We reinstate his Title VII claim against the Teamsters and Warren Stevens.

Mr. Witt argues that his Title VII claim against Roadway and Jim Kasperski should also be reinstated because the district court erred in refusing to equitably toll the ninety-day filing period. "In this circuit, a Title VII time limit will be tolled only if there has been active deception of the claimant regarding procedural requirements." Jarrett v. U.S. Sprint Communications Co., 22 F.3d 256, 260-61 (10th Cir.), cert. denied, 513 U.S. 951 (1994). Mr. Witt argues that a letter from the Kansas Human Rights Commission, telling him it had closed his case but that he could have their action reviewed by the EEOC, confused him into thinking his ninety days would not begin to run until the EEOC had reviewed the Kansas action. We agree with the district court that this letter did not actively mislead

Mr. Witt or lull him into inaction. The letter was accurate in every respect. Furthermore, it referred only to his claim against the Teamsters, and therefore could not reasonably have been construed to alter the status of his claim against Roadway. The letter falls far short of the standard of active deceit that our cases require. See Johnson v. United States Postal Service, 861 F.2d 1475, 1480-81 (10th Cir. 1988), cert. denied, 493 U.S. 811 (1989).

## B. Duty of Fair Representation

Mr. Witt argues the district court erroneously applied a six-month limitations period for unfair labor practices instead of Kansas's three-year statute of limitations for contract actions. In DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 169-171 (1983), the Supreme Court held that the six-month statute of limitations from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1994), governs hybrid claims by employees against an employer and a union. A hybrid claim refers to an employee's interdependent dual claims against his employer for breach of the collective bargaining agreement, and against his union for unfair representation. Mr. Witt argues DelCostello does not apply to an unfair representation claim standing alone.

We hold that it does. The rationale supporting DelCostello's application of the six-month limitation period to unfair representation claims in the hybrid

context is equally applicable when the claim is brought alone. First, DelCostello held that the unfair representation claim exhibits a "family resemblance" to unfair labor practice claims that "is undeniable," and noted the "substantial overlap" between the claims. DelCostello, 462 U.S. at 170. "Duty of fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions—as are virtually all unfair labor practice charges made by workers against unions." Id.

Second, unfair representation claims involve the same balance of interests at stake in hybrid claims: the national interest in the finality of private bargaining arrangements balanced against the individual interest in setting aside an unjust settlement. Every unfair representation claim implicates this balance because it alleges the union failed to represent an individual employee in a bargaining or grievance situation. See George v. Local Union No. 639, Int'l Bhd. of Teamsters, 100 F.3d 1008, 1014 (D.C. Cir. 1996); Barnett v. United Air Lines, Inc., 738 F.2d 358, 363 (10th Cir.), cert. denied, 469 U.S. 1087 (1984).

Third, the six-month limitation period is even more appropriate to the unfair representation claim when it stands alone, because its companion in the hybrid suit is essentially a contract claim to which a longer state-law limitations period would ordinarily apply. See DelCostello, 462 U.S. at 165. If the policies in favor of the six-month limitation period are strong enough to override the

contract limitations period when both claims are joined, surely those policies apply to the unfair representation claim standing alone.  See Erkins v. United Steelworkers of America, 723 F.2d 837, 838-39 (11th Cir.), cert. denied, 467 U.S. 1243 (1984).  In holding that a six-month statute of limitation applies to unfair representation claims, we follow the majority of our sister circuits as well as the trend in our own cases on related issues.  See Arnold v. Air Midwest, Inc., 100 F.3d 857, 859 (10th Cir. 1996); Rucker v. St. Louis Southwestern Ry., 917 F.2d 1233, 1237-38 (10th Cir. 1990); Barnett, 738 F.2d at 362-64; George, 100 F.3d at 1014; Richardson v. United Steelworkers of Am., 864 F.2d 1162, 1167 (5th Cir. 1989), cert. denied, 495 U.S. 946 (1990); Eatz v. DME Unit of Local Union No. 3, 794 F.2d 29, 33 (2d Cir. 1986); Peterson v. Kennedy, 771 F.2d 1244, 1251 (9th Cir. 1985), cert. denied, 475 U.S. 1122 (1986); Adkins v. International Union of Elec., Radio & Mach. Workers, 769 F.2d 330, 335 (6th Cir. 1985); Erkins, 723 F.2d at 838-39.

### C.  State Law Harassment

Mr. Witt argues the district court erred in determining that his co-workers were not acting as representatives or agents of the union when they harassed him. We review de novo a district court's dismissal for failure to state a claim.  See Grossman, 120 F.3d at 1118.  A Rule 12(b)(6) dismissal will be upheld "'only when it appears that the plaintiff can prove no set of facts in support of the claims

that would entitle the plaintiff to relief.'" Id. (quoting Roman v. Cessna Aircraft Co., 55 F.3d 542, 543 (10th Cir. 1995)). We accept as true all well-pleaded facts, as distinguished from conclusory allegations, and construe them in the light most favorable to the plaintiff. See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).

According to the general rule, Local 41 is not liable for the acts of co-workers who are not agents or representatives of the union, and we see no reason for exception in this case. See Kux Mfg. Co. v. NLRB, 890 F.2d 804, 809 (6th Cir. 1989); Anspach v. Tomkins Indus., Inc., 817 F. Supp. 1499, 1514 (D. Kan. 1993). The only allegation Mr. Witt has made of harassment by a union representative is the following statement in his affidavit: "The harassment began with, and was condoned by, the Union Representative, Warren Stevens, and was perpetuated by my co-workers." I R. doc. 31, exh. A, ¶ 7. Even if this affidavit could be considered in deciding the Rule 12 motion, it is too conclusory to state a claim of harassment by union representatives. See Jojola v. Chavez, 55 F.3d 488, 494 & nn.7-8 (10th Cir. 1995). It states no fact at all. Without an allegation of some factual occurrence that could constitute harassment by a union representative, the claim must be dismissed.

D.  Section 1981

Mr. Witt argues the evidence of race discrimination he introduced at trial was sufficient to allow his claim to go to the jury under a hostile work environment theory of race discrimination.  Fed. R. Civ. P. 50(a)(1) provides for entry of judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party."  Judgment as a matter of law is appropriate only if the evidence "'points but one way and is susceptible to no reasonable inferences supporting' the nonmoving  party."  Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir.) (quoting Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1051 (10th  Cir. 1988)), cert. denied, 502 U.S. 867 (1991).  "We must construe the evidence and inferences most favorably to the nonmoving party, and refrain from weighing the evidence, passing on the credibility of witnesses, or substituting our judgment for that of the jury."  Magnum Foods, Inc. v. Continental Cas. Co., 36 F.3d 1491, 1503 (10th Cir. 1994).  In reviewing the grant of judgment as a matter of law in a discrimination case, "the question for the appellate court is 'simply whether the evidence . . . was sufficient to justify a reasonable jury in finding discrimination.'"  Honce v. Vigil, 1 F.3d 1085, 1088 (10th Cir. 1993) (omission in original) (quoting Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174 (8th Cir. 1992).

The plaintiff in a race discrimination claim must establish that "under the

totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994) (citation omitted), cert. denied, 116 S. Ct. 92 (1995). Pervasiveness and severity are independent and equal grounds on which to support violations of § 1981. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); Smith v. Norwest Financial Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997). Although Mr. Witt has not specifically argued that the evidence meets the severity standard, in the interest of justice we will analyze his claim under both standards.

The Civil Rights Act of 1991, Pub. L. No. 102-166 § 2, amended 42 U.S.C. § 1981 to provide a cause of action for racial harassment. Because the effective date of the amendment was November 21, 1991, we may consider only acts of racial animus after that date to establish Mr. Witt's § 1981 claim. See Landgraf v. USI Film Prods., 511 U.S. 244, 286 (1994). At trial Mr. Witt introduced evidence of the following two instances of racial animus in the relevant time period: (1) the 1992 expletive incident, and (2) the 1993 telephone incident.

To fulfill his burden under the pervasiveness standard, the "plaintiff must show more than a few isolated incidents of racial enmity." Id. (quotation marks ommitted). "Instead of sporadic racial slurs, there must be a steady barrage of

- 14 -

opprobrious racial comments." Id.; see Hicks v. Gates Rubber Co., 833 F.2d 1406, 1412-13 (10th Cir. 1987). Considering the two-year period over which the two relevant incidents occurred, they do not, as a matter of law, constitute "a steady barrage of opprobrious racial comments." Bolden, 43 F.3d at 55. Although socially inexcusable, they are "a few isolated incidents of racial enmity," id., which the law cannot redress. Mr. Witt argues these incidents were steady and pervasive in light of the fact that Mr. Witt was on the road much of the time, and the only opportunities to harass him arose when he came in off the road. We are constrained to conclude, however, that even with limited opportunity for harassment, two incidents such as these in two years are insufficient to establish a racially hostile work environment under the pervasiveness prong of Meritor.

Even though not pervasive, the incidents could violate § 1981 if there were sufficient evidence that they were so severe as "'to alter the conditions of [Mr. Witt's] employment and create an abusive working environment.'" Hirschfeld v. New Mexico Corrections Dep't, 916 F.2d 572, 575 (10th Cir. 1990) (quoting Meritor, 477 U.S. at 67 (quoting Henson v. City of Dundee, 682 F.2d 897, 902 (11th Cir. 1982))). Although both incidents are considered, the 1992 expletive incident is certainly the more severe, and where the analysis stands or falls not on frequency but on the degree of severity, the 1993 telephone incident adds little.

Mr. Witt must demonstrate that the harassment was severe under both an

objective and subjective component.  See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993); Smith, 129 F.3d at 1408.  He demonstrates neither.  First, there is insufficient evidence to establish the subjective prong of the severity standard.  See Harris, 510 U.S. at 21-22.  "Plaintiff must subjectively believe that [the harasser's] conduct was so severe that it created an abusive or hostile environment."  Smith v. Norwest Fin. Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997).  Mr. Witt testified as follows about the effect of the 1992 comment on him: "And I just kind of shrugged it off and walked away."  II Supp. R. 109.  Although the comment need not have inflicted psychological injury on Mr. Witt, see Harris, 510 U.S. at 22, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."  Id. at 21-22.

Second, the evidence falls short of the objective severity requirement.  We are instructed to view the alleged harassment in the totality of the circumstances to determine if it could have created a "hostile" or "abusive" environment.  Id. at 23.  We consider the nature and context of the incidents, see Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995), keeping in mind that "[t]he mere utterance of a statement which '"engenders offensive feelings in an employee" would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII.'"  Id. (quoting Meritor, 477 U.S. at 67)

- 16 -

(citations omitted in original; second brackets in original).  The following relevant circumstances inform our judgment that the incidents are not sufficiently severe.

Neither comment was directed at Mr. Witt, and in the 1992 incident the speaker did not know Mr. Witt was within earshot.  The fact that the insult was only inadvertently overheard indicates a lower degree of animosity and severity than is present in the typical case, in which a harassing supervisor deliberately inflicts the harassment on the victim.  Further, the supervisor who made the remark immediately apologized of his own volition.  Certainly this abates, at least somewhat, its severity.

As to the setting of the incident, it did not occur in a place in which Mr. Witt was forced to stay and subject himself to humiliation.  In Smith, the harassment took place in the victim's small workspace so she was unable to escape and others could not help but overhear, creating a situation of public degradation.  See Smith, 129 F.3d at 1414.  This was held to contribute to the severity of the incidents.  See id.  Here, however, the comment occurred in a place in which, after receiving the apology, Mr. Witt could walk away.  Although the dispatcher certainly heard the remark, there is no indication that any of Mr. Witt's fellow drivers heard it.

As to the context of the words, Mr. Witt had just complained about a job

assignment. When the supervisor made his comment, in a vulgar way and to another employee, its reasonable import was that Mr. Witt had no right to another job assignment. No matter how incorrect and offensive the supervisor was, this context informs the bare words of his statement.

In view of this context, the evidence of these incidents alone is insufficient to establish harassment so severe as to "'to alter the conditions of [Mr. Witt's] employment and create an abusive working environment.'" Hirschfeld, 916 F.2d at 575 (quoting Meritor, 477 U.S. at 67 (quoting Henson, 682 F.2d at 902)). See Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170-71 (10th Cir.) (affirming determination that one incident was insufficiently severe to create a hostile working environment where sexual harassment incident began in a dispatcher's office and ended with the harasser pinning the victim onto a pool table in a drivers' lounge), cert. denied, 117 S. Ct. 437 (1996).

We reject Defendants' argument that affirming the judgment as a matter of law on Mr. Witt's § 1981 claim renders Mr. Witt's Title VII claim legally inadequate as well. In his Title VII claim, if not time-barred, Mr. Witt may be able to rely on acts prior to November 21, 1991, such as both Ku Klux Klan notes, the incident in Burlington, Colorado, and other matters, in making his showing of racial motivation. See 42 U.S.C. § 2000e-2(m) (1994).

Mr. Witt argues that the improper entry of summary judgment against his

Title VII claim prejudiced his § 1981 claim, allowing the most heinous instances of racial hatred to be admitted only for the limited purposes of Fed. R. Evid. 404(b). We reject this claim as well, because even if the Title VII claim had gone to trial, pre-1991 acts would have still been of limited Rule 404(b) significance for purposes of the § 1981 claim.

AFFIRMED in part, REVERSED in part, and REMANDED.