**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CARLA SHOEMAKER,

       Plaintiff-Appellant,

v.

NATIONAL MANAGEMENT
RESOURCES CORPORATION;
GERALD MATHENY,

       Defendants-Appellees.

No. 97-6251
(D.C. No. 96-CV-1133)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Carla Shoemaker brought this suit against her former employer, National Management Resources Corporation (NMRC), and former immediate supervisor, Gerald "Top" Matheny, alleging that she was sexually harassed by Matheny and discharged by NMRC in retaliation for complaining about the harassment, both in violation of Title VII. Plaintiff also asserted state law claims for intentional infliction of emotional distress, discrimination under the Oklahoma Discrimination in Employment Act, Okla. Stat. tit. 25, § 1302, wrongful discharge in violation of Oklahoma public policy, and negligent hiring. She appeals from the district court's grant of summary judgment in favor of defendants on all of her claims. We have jurisdiction under 28 U.S.C. § 1291, and reverse.

Because we are reviewing a grant of summary judgment, we must view the evidence in the light most favorable to plaintiff as the nonmoving party, and draw all reasonable inferences from the evidence in her favor. See Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997). Under that standard, the facts are as follows. Plaintiff was employed by defendant NMRC from March 1994 until March 15, 1995. On February 5, 1995, defendant Matheny was hired as plaintiff's supervisor. He immediately began a campaign of sexual harassment against her. He asked her out to dinner on his first day at work, and gave her his motel room number and telephone number the next day, assuring her that nobody else had those numbers. See Appellant's App. at 99. He repeatedly told her he

2

wanted to develop a "close 'working relationship'" with her. Id. at 98. He continuously called her at home to see if she wanted to go out with him, see id. at 98, and when she told him she had a boyfriend, he repeated that he wanted only a close working relationship with her, see id. at 100. He would sit in front of her desk and stare at her for perhaps fifteen minutes at a time, see id. at 99, and moved the copy machine into his office so that she would have to stand with her back to him to make copies, see id. at 96, 100. He once slammed a book shut in her face while she was reading, barely missing her nose. See id. at 99, 126.

Matheny cornered plaintiff in private to tell her a story about how big he thought his penis was until he unwrapped the complimentary "condom" in his motel room, and then realized the "condom" was actually a shower cap. See id. at 100, 122-23, 150-53, 203. He also privately told her a story about a friend of his having sex with a woman who was screaming, but it turned out she was having an asthma attack. See id. at 100, 125. He privately told her about getting a "blow job" from a beautiful woman for only $10.00 at the motel where he was staying. Id. at 100. Matheny admitted that he told a joke about getting a "penguin job" for $20.00; that is, he dropped his pants for a "blow job," but the woman took off with his money. See id. at 204-05. Plaintiff felt "belittled and intimidated" by Matheny's conduct, but was afraid of his temper and afraid to complain. Id. at 100.

3

Matheny once cornered plaintiff against a wall for ten or fifteen minutes. See id. at 100, 142-44. She was so terrified that she could not even recall what was said. See id. at 100. Matheny once called her home and asked her boyfriend if she was upset about something that had happened at work. See id. at 100, 131-32.

Matheny asked plaintiff to do push-ups for him on at least two occasions. See id. at 100. Once, when she was carrying aerobic tights through the office on her way to change clothes in the restroom, Matheny told her it looked like she needed Vaseline to help put her tights on and asked her if she needed any help. See id. at 101, 128. He patted her on her behind once after asking her to get up and retrieve a file for him. See id. at 101, 166. He also harassed another female employee by pulling on the breast pocket of her jacket where a button was missing and making a comment that he had "one of those" back in Wisconsin. Id. at 163.

Plaintiff said that she suffered anguish, uneasiness, fear, belittlement, intimidation, depression, and stress due to Matheny's conduct. See id. at 98-100. She sometimes broke down crying at work, see id. at 127-28, 154-55, 172, and changed from an "outgoing, energetic, bubbly person" to one who "kept to herself," "kept quiet," "did her job," and "barely spoke," id. at 170.

Plaintiff finally wrote a letter to the president of NMRC about Matheny's

4

conduct. See id. at 98. She asked for a paid leave of absence while the company investigated her complaint, see id. but upper management's initial reaction was that she must not be doing her job, see id. at 193. NMRC's president and Matheny's district manager discussed the matter and decided that plaintiff would be more easily replaced than Matheny. See id. at 178-79. A fellow employee who tried to talk with another manager about the alleged harassment said he was "stonewalled." Id. at 156. NMRC management never interviewed the other employees plaintiff said she had confided in, see id. at 177, and management gave her the option only to tolerate Matheny's conduct or quit her job, see id. at 182. When she told NMRC management that she could no longer tolerate Matheny's harassment, they terminated her on the spot. See id. at 96-97, 102, 111, 134, 181, 184.

On appeal, plaintiff asserts that the district court erred: (1) in concluding she had not presented sufficient evidence of a hostile work environment; (2) in finding no basis for employer liability on the part of defendant NMRC for the actions of defendant Matheny; (3) in deciding a disputed question of fact material to her retaliation claim; (4) in concluding that she had not presented sufficient evidence to support her claim for intentional infliction of emotional distress; and (5) in granting summary judgment to defendants on her claims under the Oklahoma Discrimination in Employment Act, Okla. Stat. tit. 25, § 1302, and

5

Oklahoma public policy.

We review the grant of summary judgment de novo, applying the same standard used by the district court. See Bell, 127 F.3d at 1228. Summary judgment may be granted if the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party is entitled to a judgment as a matter of law if on the undisputed facts there is insufficient evidence on an issue for which the nonmoving party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (discussing Rule 56(c)).

The district court erred in granting summary judgment to defendant NMRC on plaintiff's hostile work environment claim.[1] "'For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" Hicks v. Gates Rubber Co., 833 F.2d 1406, 1414 (10th Cir. 1987) (quoting Meritor Sav.

---

[1] The district court correctly determined that plaintiff's allegations in the lawsuit are reasonably related to the claims presented in her EEOC charge, and she has therefore exhausted her administrative remedies. See Jones v. Runyon, 91 F.3d 1398, 1400 (10th Cir. 1996), cert. denied, 117 S. Ct. 1243 (1997). The district court also correctly noted that defendant Matheny cannot be held liable in his personal capacity on plaintiff's Title VII claims. See Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996).

6

Bank v. Vinson, 477 U.S. 57, 67 (1986) (further quotation omitted, alteration in original)); cf. Witt v. Roadway Express, No. 96-3147, 1998 WL 83055, at *6-*7 (10th Cir. Feb. 27, 1998) (holding in case alleging hostile work environment based on race discrimination and harassment that "pervasiveness and severity are independent and equal grounds on which to support violations of [42 U.S.C.] § 1981"). Defendants challenge plaintiff's allegations of sexual harassment by Matheny as either unsupported by competent evidence, controverted, or not showing sexual harassment at all. We disagree. All of plaintiff's allegations set forth above are supported by evidence allowed under Rule 56. Further, it is inappropriate to engage in a factual debate on summary judgment; rather, we must construe the evidence and inferences arising from it in the light most favorable to plaintiff as the nonmoving party. See Bell, 127 F.3d at 1228. Moreover, except for the book-slamming incident, the incidents alleged by plaintiff are either overtly sexual or could reasonably be construed as sexual. Her allegations are considerably more than enough to create a triable factual dispute as to the existence of a hostile work environment due to sexual harassment. There is no need to go into the nuances in this case.

The district court also erred in finding no basis to hold NMRC liable for Matheny's alleged actions. Construed in plaintiff's favor, the evidence set forth above allows the inference that NMRC's management decided that plaintiff would

7

be easier to replace than Matheny, and simply fired her when she complained that he harassed her.

The district court should not have resolved the parties' factual dispute as to whether plaintiff voluntarily resigned her position or was fired in retaliation for complaining of Matheny's alleged harassment. See Concrete Works of Colo., Inc. v. City & County of Denver, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing Anderson, 477 U.S. at 249). Therefore, plaintiff's retaliation claim must be reinstated for further proceedings.

The district court summarily dismissed plaintiff's state law claims based on its conclusions that her Title VII claims were inadequately supported. Because we reverse the district court's conclusions on plaintiff's Title VII claims, we also reverse its decision on plaintiff's state law claims and remand for the district court's reconsideration of these claims in the first instance.

The judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the case is REMANDED for additional proceedings consistent with this order and judgment.

Entered for the Court

David M. Ebel
Circuit Judge

8