Charles James WITT, Plaintiff,

v.

**ROADWAY EXPRESS,**
et al., Defendants.

No. CIV. A. 94–2247–GTV.

United States District Court,
D. Kansas.

Sept. 25, 2001.

Charles James Witt, Tulsa, OK, Pro se.

Daniel B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, John P. Hurley, Steven A. Fehr, Donald R. Aubry, Jolley Walsh Hurley, Raisher & Roher, P.C., Kansas City, MO, Julianne H. Carter, Phoenix, AZ, for Defendants.

## MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

This case is before the court on the Motion for Summary Judgment (Doc. 160) filed by defendants Teamsters Local No. 41 and Warren Stevenson.[1] The case has been remanded by the Tenth Circuit Court of Appeals with respect to plaintiff's claims under Title VII against those defendants. Witt v. Roadway Express, 136 F.3d 1424, 1429 (10th Cir.1998). As explained in this Memorandum and Order, the motion is granted.

### I. Procedural Background

The action was brought by plaintiff Charles James Witt, a black truck driver, against his employer and his supervisor and against Teamsters Local No. 41 and Warren Stevenson, a steward for Local 41, alleging racial discrimination in violation of Title VII (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981, common law harassment, and unfair representation by the union. This court granted summary judgment against plaintiff as to all claims ex-cept his § 1981 claim, and at the close of plaintiff's evidence at trial granted judgment as a matter of law to all defendants, ruling that plaintiff had failed to establish that the events occurring after November 21, 1991, were sufficiently race-based or pervasive to support a verdict in his favor. Plaintiff appealed, and the court of appeals affirmed the judgment as a matter of law regarding the § 1981 claims as well as this court's summary judgment with respect to the Title VII claim against the employer, the state law harassment claim, and the claim for breach of the union's duty of fair representation. This court had granted summary judgment in favor of the union and the steward on plaintiff's Title VII claim on the basis that plaintiff had not filed his action against them within ninety days after receipt of a right-to-sue letter from the EEOC as required by 42 U.S.C. § 2000e–5(f)(1). The court of appeals, however, reversed the grant of summary judgment in favor of the union and the steward on plaintiff's Title VII claim, holding that there is a genuine issue of material fact as to when plaintiff had received his right-to-sue letter from the EEOC with respect to those defendants, and reinstated Mr. Witt's Title VII claim against the Teamsters and Warren Stevenson. Because the court is now deciding a renewed motion for summary judgment based on the substance of plaintiff's Title VII claim, the issue of the timing of the receipt of the right-to-sue letter is not addressed.

This court held a status conference on April 24, 1998, following the remand from the court of appeals. The court then requested Magistrate Judge Gerald L. Rushfelt to appoint counsel for plaintiff. On August 7, 1998, Magistrate Judge Rushfelt appointed Richmond M. Enochs as counsel for Mr. Witt. On September 24, 1998, Mag-

---

1. Warren Stevenson was sued as "Warren Stevens," but the correct name is Warren Stevenson, and the parties have used "Stevenson" in their summary judgment papers.

istrate Judge Rushfelt entered an order (Doc. 154) permitting the withdrawal of Mr. Enochs as counsel for plaintiff and appointed Scott K. Logan in his place. Mr. Logan was permitted to withdraw on October 20, 1998, and the court appointed Barry R. Grissom on November 20, 1998 (Doc. 156). Defendants' motion for summary judgment now before the court was filed on February 5, 1999. Several extensions of time for plaintiff's response to the motion for summary judgment were granted, and on March 25, 1999, Mr. Grissom moved to withdraw as attorney for plaintiff. On May 25, 1999, Magistrate Judge Rushfelt entered an order (Doc. 177) granting the motion by Mr. Grissom to withdraw as attorney for plaintiff, and noted that plaintiff intended to retain an attorney. On July 8, 1999, Magistrate Judge Rushfelt issued his Report and Recommendation (Doc. 180) that the court authorize plaintiff to represent himself in any further proceedings in the case and not require further appointment of counsel. The Report and Recommendation was approved by the court (Doc. 181). Following these proceedings, further extensions of time in which to respond to the summary judgment motion were granted. Some of the extensions sought by plaintiff were for the purpose of giving him time to retain his own counsel. Finally, on March 13, 2000, plaintiff's response to the motion for summary judgment was filed by plaintiff acting pro se.

## II. Facts of the Case

In plaintiff's response to the motion for summary judgment he does not controvert any of the uncontroverted facts stated by defendants in support of their motion for summary judgment. Instead, plaintiff's response contains his statement of uncontroverted facts, and although they do not comply with the requirements for such a statement imposed by D.Kan. Rule 56.1, the court will endeavor to relate the facts stated by Mr. Witt which it considers relevant to the motion for summary judgment in combination with the relevant uncontroverted facts set forth in defendants' memorandum in support of the summary judgment motion.

Plaintiff began working at the Roadway Express terminal in Kansas City in September 1987. At that time he asked to see the Teamsters local business agent. (Witt Depo. at 28:23). However, he was told by Mr. Stevenson not to go out to Local 41. Mr. Stevenson was the driver representative (union steward) and an employee of Roadway. (Witt Depo. at 29:1–12). The Teamsters Union local that plaintiff first joined was at Oklahoma City, Oklahoma. Plaintiff claims that his experience with the union at Oklahoma City differed from his experience at Kansas City. There was an open door policy in Oklahoma City where members could see the union business agent if there was a problem. Plaintiff asserts that at Roadway in Kansas City, the union members were either threatened or strongly persuaded to forget about charges or complaints, to leave a lot of things alone, to not question whether something was right or wrong and to accept what Mr. Stevenson said. (Trial transcript (Tr.) at 71:10–72:1).

Plaintiff became dissatisfied with the union because he believed that Mr. Stevenson was telling him to forget the years in which he had been a member of other Teamsters locals, and to start all over, even with initiation fees. Plaintiff believed that Mr. Stevenson was strongly suggesting that he (Mr. Stevenson) knew what he was talking about and that plaintiff did not, and that plaintiff was to accept what Mr. Stevenson said. (Tr. at 72:14–22). Plaintiff showed his dissatisfaction with the union by revoking his dues check-off authorization, and testified in his deposition that the dues revocation was the un-

derlying basis for most of his dispute with Local 41.

Defendants assert that plaintiff's dispute with Mr. Stevenson centered around his perception that Mr. Stevenson wanted to control his dealings with the union, and around Mr. Stevenson's concern with Mr. Witt's withdrawing his dues check-off authorization. Defendants cite the following passage from Mr. Witt's deposition at pages 186 and 187:

Q. And that related to Warren calling you a scab?

A. Well, it first started when he wanted me to—

Q. He?

• Warren. He spent about four months trying persuade me to accept that what he said was true, and to forget about all my time in the union and start over including my-you know, forget about all of the time I had and start over, including the initiation fee. When I disagreed Warren began to inform the other drivers about everything that was going on. And when I decided to pay my dues myself, then he came to me and that is when Gann was present when he talked to me. And he didn't ask me; he demanded me to go in there, to go back to the office and talk to Kasperski,[2] and tell him these things. So then I began to talk to Kasperski and tell him I wanted to settle this problem before it got out of hand.

Defendants cite similar testimony at pages 108, 113–14 of plaintiff's deposition, and pages 104–105 and 117 of the transcript of plaintiff's trial testimony. Defendants' assertion is not specifically controverted by plaintiff.

Mr. Witt testified in his deposition and at trial that Local 41 had processed grievances on his behalf, and that he had received pay for alleged violations of the collective bargaining agreement between the Teamsters and Roadway. He also testified that he had not requested the union to file a grievance alleging that he had suffered racial discrimination while employed at Roadway. He testified that he had completed and turned in grievance forms on his own, but had never filed a grievance alleging that he had been harassed or otherwise discriminated against on the basis of his race.

In November 1990 someone unknown to plaintiff placed a flyer bearing the "KKK" insignia on the windshield of his vehicle while it was parked in a company parking lot. The document also bore the words "Pay your dues nigger." Plaintiff did not notify any representative of Local 41 about this incident.

Plaintiff testified in his deposition that other Roadway drivers had developed a plan to interfere with his sleep while he was on the road by knocking on the door of his motel room or calling him on the telephone. He did not identify the specific time of such occurrences.

At trial and in his deposition, plaintiff testified about other incidents involving fellow drivers employed by Roadway: In late 1990, a group of drivers met with him at Burlington, Colorado, while he was on a road trip, and attempted to persuade him to drop his dispute with the union and begin paying his dues. The drivers had been drinking and had invited Mr. Witt to join them. One of the group was black. Another member of the group of drivers, whom plaintiff could not identify, referred to him as a "nigger." Mr. Witt states that he "felt" that the four drivers were instructed either directly or indirectly by Mr. Stevenson. However, Mr. Witt bases

---

2. Kasperski was plaintiff's supervisor.

this conclusion on nothing other than his own opinion.

On another occasion, a number of drivers in El Reno, Oklahoma, threatened to "jump" him because he was a "scab." Some of the drivers involved in this incident were black, and black drivers took part in calling him a scab; they expressed their disagreement with his position in his dispute with the union. Mr. Witt testified at one point that he believed that the term "scab" had racial implications, because it is a derogatory term. He also testified that he defined the term as "someone working without union representatives, union representation." Other than the use of the word "scab," he never identified any instance in which Mr. Stevenson or any other official of Local 41 used a racially derogatory term in reference to Mr. Witt or any other person. Mr. Witt testified in his deposition that the only incidents which he considered to involve racial threats were the "KKK" note on his windshield, the related damage to his car, and the incident in the motel room in Burlington, Colorado.

Plaintiff testified in his deposition about burglaries which occurred at his home. He speculated that Local 41 was responsible for the burglaries, but presented no evidence as to the identity of the burglars other than his speculation. He did not ascribe any racial motivation to the burglaries.

Mr. Witt applied for Social Security disability benefits in 1994, and in 1995 he was determined by the Social Security Administration to be totally disabled. He has continued to receive disability benefits since that time. He does not claim that he lost any wages as a result of any conduct by Local 41.

In his statement of uncontroverted facts, plaintiff cites his deposition at page 100 to state that he was being given truck runs, that is, job assignments, in a discriminatory manner. However, the transcript at that page, line 16 reads as follows: "Q. How else were you treated differently by Roadway? A. Well, as I stated, when I was being dispatched they told me, you know, just leave it alone." Plaintiff states in his response that this, in part, was based on his color. He cites the deposition transcript at pages 166 and 167 in support of this. However, the statement is based upon a hearsay statement from a fellow driver named Henry McDaniel, who plaintiff states told him that part of the reason for his treatment was because he did not go along with Mr. Stevenson, and part of it was because he was black.

Plaintiff also states that Mr. Stevenson told Mark Sutherland, a fellow driver for Roadway, that Mr. Witt was a "scab," and plaintiff contends that statements made by Mr. Stevenson created a hostile work environment. Mr. Sutherland told Mr. Witt that he (Mr. Sutherland) believed what Mr. Stevenson had said, and that something was going to happen to Mr. Witt or his car. It was following this conversation that the Ku Klux Klan note was found on the windshield of Mr. Witt's car while it was parked in the Roadway lot, and in addition, the windshield was smashed. Following this incident, other notes were left on the car, and further damage to it occurred.

Much of Mr. Witt's statement of facts relates to matters involving his supervisors at Roadway, rather than any activities by the union. There is no evidence in the record that the union was involved in what Mr. Witt claims to have been racially discriminatory acts on the part of Roadway.

### III. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. See *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See *id.* The court must consider the record in the light most favorable to the nonmoving party. See Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir.1984).

## IV. Discussion

■ Defendants, in their memorandum supporting their motion for summary judgment, contend that plaintiff has not established that the union and Mr. Stevenson engaged in conduct that was sufficiently severe and pervasive to constitute a racial-ly hostile work environment during his employment with Roadway. The court agrees. There is no evidence in the record before the court that Local 41 or Mr. Stevenson on its behalf, engaged in any conduct toward plaintiff that was motivated by his race. Defendants point out that the focus of Mr. Witt's complaints against Local 41 and Mr. Stevenson involved Mr. Stevenson's alleged attempt to dominate the relationship between Mr. Witt and the local, and Mr. Stevenson's disapproval of Mr. Witt's attention to his dues obligation. The court finds such to be the case. The record reflects that Mr. Witt and Mr. Stevenson continually disagreed about the effect of Mr. Witt's previous association with the Teamsters local at Memphis. Mr. Witt repeatedly refers to Mr. Stevenson telling him to forget about Memphis, and to pay his dues through the wage check-off system at Roadway in Kansas City, but Mr. Witt has never identified any racially derogatory comments made by Mr. Stevenson or any agent of the union. The nature of the dispute between the parties involved Mr. Witt's dues and his union membership. The dispute does not support a reasonable inference that the conduct of Mr. Stevenson or the union was motivated by race.

■ Mr. Witt suggests that the use of the term "scab" toward him amounted to racially derogatory comments. However, Mr. Witt himself defined the term to mean "[s]omeone working without union representatives, union representation." The use of the term does not support Mr. Witt's subjective assertion that he was racially discriminated against by the union.

In its opinion remanding the case to this court for consideration of plaintiff's claims pursuant to Title VII, the court of appeals observed that although the incidents occurring after November 21, 1991, were insufficient to sustain his § 1981 claim, "Mr. Witt may be able to rely on acts prior

to November 21, 1991, such as both Ku Klux Klan notes, the incident in Burlington, Colorado, and other matters, in making his showing of racial motivation." *Witt*, 136 F.3d at 1433. This court considers the opinion to direct it to consider all incidents that had racial content, whether they occurred before or after November 21, 1991, and it has done so.

Two of the incidents occurred after November 21, 1991. They each involved the use of a racial epithet. In one incident the racially derogatory term was directed toward plaintiff by his supervisor at Roadway, and in the other the term was directed toward plaintiff by a Roadway dispatcher. Neither of these two incidents involved Local 41 or Mr. Stevenson. The incidents do not support plaintiff's claim against the union defendants.

Plaintiff, in his response to the motion for summary judgment, cites several incidents that occurred prior to November 21, 1991. The following is a quotation from page 5 of plaintiff's response:

In November 1990, after revoking his union dues deduction and complaining about not getting credit for the past time in the union, (seniority), Mr. Witt found a note on his car's windshield while his car was parked in Roadway's parking lot. Tr. at 92, 271. The note was on Knights of the Ku Klux Klan, International office letterhead. Dk. 128 at 31; Tr. at 91–92. The note said, "pay your dues, nigger". [sic] Id; Tr. at 89–93. That employer, Roadway Express was made knowledgable [sic] of racial harrassment [sic] by Mr. Witt showing of [sic] the Ku Klux Klan note to his Roadway supervisor, Jim Kasperski. Dk. 128 at 54; Tr. at 93. In addition, as Mr. Sutherland had threaten, [sic] Mr. Witt's windshield was smashed, Dk. 128 at 54; Tr. at 95. A second note on

Invisible Empire Knights of the Ku Klux Klan letterhead was also left on Mr. Witt's car windshield. Dk. 128 at 32–33. However, the rain washed off the note that was written on the second piece of Ku Klan Klux [sic] letterhead, Dk. 128 at 33. On three or four other occasions after the Ku Klux Klan notes were left on Mr. Witt's car, there was [sic] other damages to his car. Dk. 128 at 59. This included someone "busting out" his car ignition, breaking the little "wing" window, letting all the air out of his tires, taking a piece of chrome off the wheel and breaking the driver's side window. Dk. 128 at 59; Tr. at 107. Mr. Witt's home was also burglarized. Dk. 128 at 74. However, the only thing that was taken from his home were some papers regarding his problems with Roadway and the Teamsters. *Id.*[3]

Mr. Witt cites the incident at a motel in Burlington, Colorado "sometime in 1990 or 1991, while on the road from Roadway" (plaintiff's response at page 6) when he was approached in his room by four other Roadway drivers who were also members of the Teamsters. His response at this point states that the drivers tried to "cajole" him into not pursuing his complaints against the Teamsters, that one of the drivers called him a "nigger," that they talked about Mr. Witt being black, and that they told him he needed to leave things alone. He states that he "felt" that the four drivers were instructed by Mr. Stevenson, "either directly or indirectly," regarding this incident. As the court of appeals said when this case was before it: "According to the general rule, Local 41 is not liable for the acts of co-workers who are not agents or representatives of the union, and we

---

**3.** The citations to "Dk. 128" and to "Tr." are references to the transcripts of Mr. Witt's deposition and to the trial transcript, respectively.

see no reason for exception in this case." *Witt*, 136 F.3d at 1431 (citations omitted). The fact that Mr. Witt "felt" that the co-workers were directed by Mr. Stevenson does not make them agents or representatives of the union. In addition, in his response, Mr. Witt alleges that he was discriminated against in the assignment of truck runs, but these discriminatory acts are all alleged to have been performed by his Roadway Express supervisors. There is no assertion that the Teamsters made the assignments.

 Mr. Witt has presented no evidence with respect to the Ku Klux Klan incidents, the damage to his car, or his house burglary, indicating that these were acts perpetrated or fomented by the union defendants. The suggestion of involvement of Local 41 or Mr. Stevenson is supported only by Mr. Witt's conclusory allegations. To survive summary judgment, the conclusory statements of the nonmovant are not sufficient. See *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) ("[T]he nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.") (citations omitted). The testimony of Mr. Witt in his deposition and at trial do not satisfy these requirements. He cites to nothing in the record that any racial comments were made by officers or agents of the union. Other than his conclusory statements, there is no evidence presented to the court to support his assertion that the conduct of the union defendants was racially motivated. When defendants pointed out the absence of proof, the burden rested upon plaintiff to provide evidence to the contrary. See *Hall*, 935 F.2d at 1111 n. 5. Plaintiff has failed to provide such evidence.

Plaintiff has failed to establish that there is a genuine issue of material fact on the issue of racial motivation on the part of Local 41 and Mr. Stevenson, and defendants are entitled to summary judgment. Defendants have also contended that plaintiff cannot make a claim against Mr. Stevenson, either in his individual or official capacity; that plaintiff may rely only on acts occurring before November 21, 1991; that plaintiff is not entitled to a jury trial or to punitive damages for pre-November 21, 1991, conduct, because the amendments to Title VII were not retroactive; and that plaintiff's claims are moot, because the equitable relief sought is no longer available due to the fact that he is no longer employed and is disabled. The court concludes that it is not necessary to address these issues because it has concluded that defendants are entitled generally to summary judgment on the racial motivation issue.

IT IS, THEREFORE, BY THE COURT ORDERED, that the Motion for Summary Judgment (Doc. 160) of defendants Teamsters Local No. 41 and Warren Stevenson is granted, and that the case is dismissed.

The clerk is directed to transmit copies of this order to counsel of record and to the pro se plaintiff.

**BY THE COURT IT IS SO ORDERED.**